**Tom H. RIDDELL, Jr. et al., Plaintiffs-Appellees,**

v.

**The NATIONAL DEMOCRATIC PARTY et al., Defendants-Appellants,**

v.

**Honorable William L. WALLER, Governor of the State of Mississippi, et al., Defendants-Appellees.**

**No. 78–2839.**

United States Court of Appeals, Fifth Circuit.

Aug. 18, 1980.

---

Neil Bradley, Laughlin McDonald, Atlanta, Ga., Frank R. Parker, Jackson, Miss., for defendants-appellants.

Stennett, Wilkinson & Ward, James A. Peden, Jr., Gene A. Wilkinson, Jackson, Miss., for Tom H. Riddell, et al.

Peter M. Stockett, Jr., Asst. Atty. Gen., Jackson, Miss., for William Waller and other state officials.

Before THORNBERRY, ANDERSON and THOMAS A. CLARK, Circuit Judges.

THORNBERRY, Circuit Judge:

In this case we must decide whether the district court abused its discretion in denying attorneys' fees to the prevailing party in a suit under 42 U.S.C. § 1983 (1976). Because the special circumstances recited by the district court do not justify the denial of attorneys' fees in this case, we reverse the judgment and remand the case to the court below.

## I. Facts and Proceedings.

This is the second appeal to our court in this litigation to determine which group should have the right to call itself the "Democratic Party of the State of Mississippi." Under Miss.Code Ann. § 23–1–5 (1972), each political party in the state is required to register its name and officers with the secretary of state. Such registration gives the party the exclusive right to its name; no other party can use another's registered name or part thereof.

The plaintiffs in this suit registered in 1950 as the "Democratic Party of the State of Mississippi." Throughout the litigation this group is also known as the "Regulars." Their rivals for use of the Democratic Party name are the "Loyalists," a group formed from the Freedom Democratic Party, who tried unsuccessfully to unseat the Regulars' Mississippi delegation to the 1964 Democratic National Convention. At the 1968 national convention the Loyalists were

more successful. The national party seated them instead of the Regulars as the delegation from Mississippi, and recognized the Loyalists as the representatives of the national party in Mississippi. In early 1972 the national party again called the Loyalists instead of the Regulars to submit delegates for the upcoming national convention.

In April 1972 Riddell and various other officers, delegates, and electors from the Regular group filed suit individually and as representatives of the state Democratic Party under 42 U.S.C. § 1983 and other statutes to enjoin various Loyalist officers from using the Democratic Party name, and to enjoin the National Democratic Party from recognizing the Loyalists instead of the Regulars. The complaint also asked for an award of attorneys' fees and costs against the defendants. The Loyalists responded by filing a cross-claim against the National Democratic Party to enjoin them from recognizing the Regulars because the Regulars had systematically discriminated against blacks. The Loyalists filed a counterclaim against the Regulars under 42 U.S.C. § 1983 to declare the state exclusive registration statute unconstitutional as an impermissible restriction on first amendment associational freedoms. In this counterclaim the Loyalists also joined as party defendants the governor, secretary of state, and attorney general charged with enforcing the challenged statute.

The district court held that the Regulars constituted the official, legal "Democratic Party of the State of Mississippi," and that the Loyalists had no legal existence. The court observed that the national party's refusal to seat the Regulars at the 1968 national convention deprived the vast majority of Mississippi Democrats a voice in the national election. The court ordered the national party to provide a full hearing for the Regulars' claim to be recognized at the 1972 national convention. The court dismissed the Loyalists' crossclaim and counterclaims. After a full hearing, the national party still decided to recognize the Loyalists instead of the Regulars. The district court denied the Regulars' motion for a further injunction against the national par-

ty, and the Regulars appealed. The Loyalists and national party also appealed to declare the state exclusive registration statute unconstitutional.

On appeal in 1975, we held that the Mississippi exclusive party registration statute impermissibly deprived the Loyalists of important first amendment rights. *Riddell v. National Democratic Party*, 508 F.2d 770 (5th Cir. 1975). We reversed and remanded the judgment of the district court granting the Regulars exclusive rights to the Democratic Party name in Mississippi.

After remand in April 1975, the Regulars and Loyalists increased their informal negotiations, begun in 1974, about unifying the two political factions as one party. These negotiations proceeded tentatively and gradually through 1976, when both the Regulars and Loyalists cooperated together for the national election campaign. During the period of this litigation, the Regulars campaigned separately to raise funds necessary to pay attorneys' fees for their counsel who had pressed the Regulars' claim for the exclusive use of the Democratic Party name.

In May 1977 leaders from both the Regular and Loyalist factions met for a settlement conference. At the conference the two factions agreed to merge into a single unified party. As co-chairman of the unified party the groups chose Tom Riddell, former chairman of the Regulars, and Aaron Henry, former chairman of the Loyalists. The Regulars donated $14,000 to the unified party; some of these funds paid debts incurred by the Loyalists. The parties submitted to the district court an agreed order of dismissal approved and signed by counsel for the Regulars, Loyalists, National Democratic Party, and the state attorney general. This document declared that the litigated dispute between the parties had become moot as a result of the unification, although the agreed order of dismissal expressly recognized that the state exclusive registration statute was unconstitutional. The agreed order of dismissal also stated that the issues of costs on appeal and in the district court

would be reserved pending decisions on requests for taxation and motions filed by the Loyalists and the national party. At the same time that the parties submitted the agreed order of dismissal to the district court, the Loyalists and the national party filed a motion for an award of costs and attorneys' fees under 42 U.S.C. §§ 1973*l*(e), 1988 (1976).

In November 1977 the district court conducted a hearing about the award of costs and fees. The Regulars presented two witnesses, who testified that an award of fees would be a hardship upon the Regulars and would disrupt the unity of the newly unified Democratic Party. In July 1978 the district court denied the Loyalists' and national party's motions for an award of fees and costs. The court found that an award of fees would disrupt the new party unity, and would be inequitable because the Regulars' funds were transferred to the unified party and used to pay debts incurred by the Loyalists. From this order the Loyalists and national party now appeal.

## II. Attorneys' Fees Awards under Section 1988.

42 U.S.C. § 1988 provides that the prevailing party in a suit to enforce rights under section 1983 may recover a reasonable attorneys' fee. Congress enacted this statute in 1976 to encourage private attorneys general to enforce fundamental constitutional rights under section 1983. S.Rep. No.94–1011, 94th Cong., 2d Sess. 2, *reprinted in* [1976] U.S.Code Cong. & Admin.News, pp. 5908, 5910. Sections 1988 and 1973*l*(e) use similar language and should be construed similarly. *Id.*

Because this litigation was pending in 1976 when the statute was enacted, the attorneys' fee award provisions of section 1988 apply retroactively to this case. *Morrow v. Dillard*, 580 F.2d 1284, 1299–1300 (5th Cir. 1978). Appellees do not contest that the Loyalists constitute the prevailing party: the Loyalists won the central issue in this litigation when we declared the state exclusive registration statute unconstitutional, and this holding was expressly included in the agreed order of dismissal. *See Iranian Students Association v. Edwards*, 604 F.2d 352, 353 (5th Cir. 1979) ("proper focus is whether the plaintiff has been successful on the central issue"); *Brown v. Culpepper*, 559 F.2d 274, 277 (5th Cir. 1977) (plaintiffs constitute prevailing parties even though litigation concluded with voluntary settlement). Appellees do not contend that the principles of *Christiansburg Garment Co. v. EEOC*, 434 U.S. 412, 422, 98 S.Ct. 694, 700, 54 L.Ed.2d 648 (1978) (no award of attorneys' fees for civil rights defendant unless complaint was "frivolous, unreasonable or without foundation") should apply to the Loyalists in this case; although technically defendants, the Loyalists constituted effective plaintiffs on the counterclaim, and they championed the principles protected by the Constitution. *See Kingsville Independent School District v. Cooper*, 611 F.2d 1109, 1114 (5th Cir. 1980) (attorneys' fee award to civil rights defendant and counterclaimant); S.Rep.No. 94–1011, 94th Cong., 2d Sess. 4 n. 4, *reprinted in* [1976] U.S.Code Cong. & Admin.News, pp. 5908, 5912 ("in the procedural posture of some cases, the parties seeking to enforce such [constitutional] rights may be the defendants . . ."). As prevailing parties, the Loyalists and national party are entitled to an award of attorneys' fees under section 1988 regardless of their ability to pay for counsel or the availability of free legal counsel. *Gore v. Turner*, 563 F.2d 159, 164 (5th Cir. 1977). Although section 1988 entrusts the award of fees to the discretion of the trial court, a prevailing party should recover attorneys' fees unless special circumstances would render such an award unjust. *Morrow v. Dillard*, 580 F.2d at 1300.

## III. Special Circumstances under Section 1988.

Section 1988 requires a strong showing of special circumstances to justify denying an award of attorneys' fees and costs to the prevailing party in a section 1983 claim. For example, in *Criterion Club of Albany v. Board of Commissioners*, 594 F.2d 118, 120

(5th Cir. 1979), we said that, as long as a party actively prevailed through a settlement to vindicate its rights, no special circumstances justified a district court decision to deny fees to the prevailing party even though

(1) the defendants never admitted liability and there was nothing in the record to indicate that plaintiffs would have prevailed on the merits . . .

(2) the case had not proceeded far before it became moot as a result of the legislation, and, in fact, a substantial portion of the paperwork generated in this case was concerned solely with the issue of attorney's fees; and

(3) the burden of an award would fall on the present taxpayers of Dougherty County for the alleged discriminatory consequences of a system established almost 20 years ago.

In *Johnson v. State of Mississippi*, 606 F.2d 635, 637 (5th Cir. 1979), we upheld an award of attorneys' fees to a prevailing party even though the defendants alleged the following special circumstances:

. . . (1) that they believed the challenged statute was constitutional, given the decision in *Sparrow v. Gill*, 304 F.Supp. 86, 91 (M.D.Md.1969), upholding a similar law; (2) that the fee award must be paid from the limited budget of the State Board of Education and the financial burden will fall on the taxpayers of Mississippi; (3) that defendants' conduct was required by the Mississippi Legislature; and (4) that this case does not involve "invidious" discrimination.

Those cases that have recognized special circumstances sufficient to deny an award of attorneys' fees to a prevailing party demonstrate that such special circumstances arise only in unusual situations. For example, several cases upholding decisions to deny attorneys' fees involve situations in which the plaintiff filed under section 1983 to recover what was essentially a tort claim for private monetary damages. These suits did not require injunctive relief or confer significant civil rights to the public. *See Zarcone v. Perry*, 581 F.2d 1039, 1042–45 (2d

Cir. 1978), *cert. denied*, 439 U.S. 1072, 99 S.Ct. 843, 59 L.Ed.2d 38 (1979) (upholding denial of fees award in damages action for insults suffered from state judge); *Buxton v. Patel*, 595 F.2d 1182, 1184–85 (9th Cir. 1979) (upholding denial of fees award in damages action involving lease of real property); *Martin v. Hancock*, 466 F.Supp. 454, 455–56, (D.Minn.1979) (denying fees award in damages action for injuries from dog-bite). *But see Sargeant v. Sharp*, 579 F.2d 645, 648 (1st Cir. 1978) (reversing denial of fees award to party who sued only for damages and used contingent fee arrangement). In *Chastang v. Flynn & Emrich Co.*, 541 F.2d 1040, 1045 (4th Cir. 1976), the Fourth Circuit cited the private nature of the plaintiff's claim as a factor in affirming the denial of attorneys' fees in an action to recover individual damages for past discrimination from a retirement plan. The court emphasized that special circumstances justified the denial of a fee award because the plan was amended to abolish any discriminatory impact upon other employees even before the plaintiffs filed suit, and because the defendants had little control over the contested aspects of the plan. In *Naprstek v. City of Norwich*, 433 F.Supp. 1369, 1370–71 (N.D.N.Y.1977), the court emphasized the absence of public benefit when it denied an award of attorney's fees to a plaintiff who sued to invalidate on vagueness grounds an antiquated and rarely enforced juvenile curfew ordinance.

Several other cases denied an award of attorneys' fees because, even though the plaintiffs received the benefits desired from their litigation, their efforts did not contribute to achieving those results. *See Bush v. Bays*, 463 F.Supp. 59, 66–67 (E.D.Va.1978) (no fees award to plaintiffs whose lawsuit was not a contributing factor in reforming challenged food stamp procedure) (alternate holding); *Young v. Kenley*, 465 F.Supp. 1260, 1264 (E.D.Va.1979) (no fees award to plaintiff whose frivolous suit was unnecessary to obtain relief desired) (alternate holding). The fact that the plaintiffs' lawsuit did not contribute to achieving the desired results from the litigation was also cited as a factor in *Aho v. Clark*, 608 F.2d

365, 367–68 (9th Cir. 1979). In this case the Ninth Circuit upheld the denial of an attorneys' fees award because in settling the case the parties had not contemplated a subsequent award of fees, and because plaintiffs' litigation was not instrumental in bringing defendants' challenged school breakfast program in compliance with federal standards.

▮ The situation presented on this appeal does not involve any of these reasons for recognizing special circumstances sufficient to deny an award of attorneys' fees. Unlike the plaintiffs in *Zarcone* or *Naprstek,* the Loyalists did not sue merely for private monetary damages or to challenge an antiquated, rarely enforced statute: the Loyalists counterclaimed to enjoin the active enforcement of a statute that interfered with important associational freedoms for a great number of Mississippi voters. In contrast to the *Chastang* defendants, who possessed little control over the challenged retirement plan, the Regulars' officers and state officials exercised direct power to enforce the unconstitutional registration statute. The Loyalists' vigorous advocacy throughout this litigation was essential for invalidating the unconstitutional statute; the Loyalists did not merely benefit from another party's efforts as did the plaintiffs in *Bush v. Bays* and *Young v. Kenley.* The final settlement agreement between the Loyalists and Regulars reserved the issue of litigation costs; the Loyalists did not compromise their right to pursue a subsequent fees award as did the plaintiffs in *Aho v. Clark.* None of these prior cases that recognized special circumstances sufficient to deny an award of attorneys' fees provides meaningful support for the district court's finding of special circumstances in this case.

## IV. The District Court's Finding of Special Circumstances.

The district court's finding of special circumstances for the denial of an award of attorneys' fees and costs to the Loyalists and the national party is as follows:

In the present case, this Court declines to make any such award for several reasons.

First, contrary to Defendant's assertions, this Court is sensitive to the newfound unity of the State Democratic Party and the potential disruptive effect an award of attorney's fees could cause. With yet another major election in the very near future, it is to the benefit of *all* the parties hereto that the delicate balance as struck by the parties be maintained.

Second, both of the former factions, the Regulars and Loyalists, are now defunct. The record shows that the funds from the Regulars' treasury were transferred to the registry of the unified Democratic Party. Moreover, some of these funds were used to pay debts incurred by the former loyalist group. Any award of attorney's fees, under the peculiar circumstances of the present case, would produce an anomalous and inequitable result.

*A. State Officials.*—The special circumstances recited by the district court involve only the Regular party officers. The court did not mention any special circumstances that would justify denial of at least a partial fees award against the governor, secretary of state, and attorney general, who were responsible for enforcing the unconstitutional statute against the Loyalists. These state officials remain in the suit as a result of the Fifth Circuit order reversing the district court judgment that dismissed the Loyalists' counterclaim against these officials. Separate counsel for these state officials approved and signed the agreed order of dismissal.

▮ State officials cannot show special circumstances sufficient to prevent an award of fees merely because the officials enforced the statute in good faith compliance with their official duty, or because any award of attorneys' fees would ultimately be satisfied by the state taxpayers. *Johnson v. State of Mississippi,* 606 F.2d at 637. In the absence of more specific findings of special circumstances, we must remand the case back to the district court for at least a partial allocation of costs and attorneys' fees against the state officials. These offi-

cials will be liable only in their official capacity absent a showing of bad faith that would justify liability in an individual capacity. *Hutto v. Finney*, 437 U.S. 678, 700, 98 S.Ct. 2565, 2579, 57 L.Ed.2d 522 (1978); *McNamara v. Moody*, 606 F.2d 621, 626–27 (5th Cir. 1979).

■ *B. Regular Party Officers.*—In denying an award of attorneys' fees against the Regular party officers, the district court cited two main reasons to support its decision. The first reason for denying a fees award was that an award of fees to the Loyalists and national party, and against the Regulars, would disrupt the unity of the newly merged party. The testimony at the special hearing suggests that the principal disruption feared by the Regulars might occur as follows: an award of fees to the Loyalists and national party might emphasize to the former Regulars that they had lost the litigation, and might thus destroy their illusion that both sides came out even in the merger. As a result, former Regulars might become embittered and try to separate the Regular faction from the unified party. Although we recognize that a fees award might embitter some former Regulars, we also note that the former Loyalists and the national party have apparently decided that the risk of disrupting their merged party is not great enough to outweigh their need for an award of fees. Moreover, the acrimony and expense reflected by the parties in contesting the fees issue on appeal suggests that the denial of a fees award has not itself categorically furthered party unity. Even if the denial of a fees award would tend to promote party unity, however, we conclude that the goals of the Civil Rights Act would be ill-served if we denied an award of attorneys' fees solely to preserve the illusions of those who had vigorously supported an unconstitutional statute. In reality, the Regulars suffered a defeat that became obvious when we declared the challenged registration statute unconstitutional, and especially when the agreed order of dismissal expressly recited that the statute was unconstitutional. In such situations, Congress has instructed the courts to award attorneys'

fees as an incentive for parties who prevail in protecting important constitutional rights, rather than to deny such fees in order to preserve the illusions of a party who advocated the wrongful deprivation of those rights.

The Regulars also contended that a fees award might disrupt party unity because the party would be hard-pressed to raise the funds necessary to pay the award. We realize that the payment of a fees award will inflict hardship upon any losing party; in enacting section 1988, Congress determined that this hardship is outweighed by the need to encourage prevailing parties like the Loyalists to litigate for the protection of valuable constitutional rights. Moreover, the record in this case does not indicate that payment of the fees award will constitute an insurmountable burden upon the party. The Regulars have already completed a fund-raising campaign to pay the fees for their own attorneys during this litigation; the Regulars now have shown no sufficiently compelling reasons why the party could not launch a similar fund-raising campaign to pay the fees for the Loyalists and national party.

Contrary to the district court's finding, the record shows that the parties did not strike a "delicate balance" with regard to fees and costs when they agreed on a settlement. The agreed order of dismissal expressly reserves the question of litigation costs for resolution at proceedings then pending. The Loyalists and national party filed their motion for an award of fees and costs at the same time that the agreed order of dismissal was submitted. Riddell himself testified that during negotiations the Loyalists did not mislead the Regulars about their intent to ask for an award of attorneys' fees and costs. Record, Vol. II, at 132.

■ The second reason cited by the district court for denying an award of attorneys' fees was that such an award would be inequitable because the Regular and Loyalist factions were now defunct, and the Regulars already gave the unified party $14,-

000, some of which was used to pay debts incurred by the Loyalists. Contrary to the district court's reasoning, we conclude that the merger between the Regular and Loyalist factions does not render an award of attorneys' fees unfair to the Regulars, or otherwise inequitable to any party. As a result of the merger, the assets and debts of both the Regular and Loyalist factions were assumed by the unified party; thus, the $14,000 of surplus Regulars' funds were applied against the net debts incurred by the Loyalists. The effect of a fees award in this case would be to create a debt of the former Regular faction that will be assumed by the unified party and paid from unified party funds. This result is not unfair to the Regulars, who can spread their liability, and it is not otherwise inequitable because the unified party will be assuming this new debt of the Regulars in the same manner that the unified party assumed the debts of the Loyalists at the time of the merger.

▇▇▇ In conclusion, the special circumstances cited by the district court in this case are insufficient to justify the denial of an award of attorneys' fees and costs to the Loyalists and the national party. We reverse the order of the district court, and remand the case for an award of attorneys' fees and costs calculated under the guidelines announced in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714, 717–19 (5th Cir. 1974). The award should include an allowance for fees and costs incurred for purposes of contesting this award in the district court and on this appeal. *Johnson v. State of Mississippi*, 606 F.2d at 637–39. On remand the district court should devise an equitable plan for allocating payment of the award between the Regular party officers and the state officials.

REVERSED AND REMANDED.