**KNIGHTS OF the KU KLUX KLAN, REALM OF LOUISIANA, Plaintiff-Appellee-Cross-Appellant,**

v.

**EAST BATON ROUGE PARISH SCHOOL BOARD et al., Defendants-Cross-Appellees,**

**U. S. Department of Health, Education and Welfare, Defendant-Appellant-Cross-Appellee.**

No. 79–1780.

United States Court of Appeals, Fifth Circuit. Unit A

Feb. 23, 1981.

Donald L. Beckner, U. S. Atty., C. Michael Hill, Baton Route, La., Joseph B. Scott, Atty., U. S. Dept. of Justice, Civ. Div., Appellate Staff, Washington, D. C., William Kanter, Wendy M. Keats, Stuart E. Schiffer, Alice Daniel, Acting Asst. Attys. Gen., Atty. Gen. Office, U. S. Dept. of Justice, Washington, D. C., for H. E. W.

Newman, Duggins, Drolla, Gamble & Anderson, Lawrence R. Anderson, Jr., Baton Rouge, La., for plaintiff-appellee-cross-appellant.

John F. Ward, Jr., Baton Rouge, La., for East Baton Rouge.

Before GOLDBERG, POLITZ and SAM D. JOHNSON, Circuit Judges.

PER CURIAM:

As of November 1975, the East Baton Rouge Parish School Board (the Board) maintained a policy of allowing organizations to rent its facilities for meetings on a first come, first served basis. In early November of 1975 the Knights of the Ku Klux Klan, Realm of Louisiana (plaintiff) requested and was granted permission to use a high school gymnasium for a "patriotic" meeting. On November 19, however, Dr. John Bell, chief of the Dallas branch office for civil rights for the United States Department of Health, Education, and Welfare (HEW) informed the Board that if plaintiff's proposed meeting were permitted the Department would institute enforcement proceedings seeking the termination of all Emergency School Aid Act funds to the school district. ESAA regulations deny federal funding to any agency permitting the use of its facilities by any group that discriminates against minority children. *See* 20 U.S.C. § 1601 *et seq.*; 45 C.F.R. § 185.43(d)(3). Dr. Bell also informed the Board that plaintiff's use of the facilities would also violate Title VI and thus "trigger an enforcement action . . . to end all federal financial assistance to your district." Faced with the possible loss of its federal funding, the Board withdrew permission for the meeting the next day, November 20.

The following day, however, Dr. Bell acknowledged in a telegram to the Board that if the first amendment required that plaintiff's use of the school facilities be permitted, such a use could not be grounds for an enforcement action under any federal program. Unsure of what to do, the Board took no action to reverse the cancellation.

Plaintiff filed suit on November 21, 1975, pursuant to, inter alia, 42 U.S.C. § 1983 and the first and fourteenth amendments of the United States Constitution. The district court denied plaintiff's motion for a temporary restraining order on November 22, 1975. On December 10, 1975 plaintiff amended its complaint to include the federal defendants and asserted claims under, *inter alia*, 42 U.S.C. §§ 1985 and 1986. The Board maintained a moratorium on outside use of school facilities until February 19, 1976, when the Board adopted a policy that prohibited use of school facilities to any group advocating racial discrimination. Plaintiff subsequently amended its complaint to include an attack on the new policy.

Following a hearing on April 20, 1976, the district court denied plaintiff's motion for preliminary and permanent injunctive relief, and dismissed the suit. The district court's order was reversed by this Court in *Knights of the Ku Klux Klan, Realm of Louisiana v. East Baton Rouge Parish School Board*, 578 F.2d 1122 (5th Cir. 1978).

Following remand by this Court, the district court entered a judgment and injunction order that set general nondiscriminatory guidelines to which the Board must adhere in making its facilities available to the public. The court also permanently enjoined HEW "from interfering or attempting to interfere with [plaintiff's] use of school facilities." The order also stated that the costs of the proceeding were to be taxed against HEW.

■ In response to plaintiff's motion for attorneys' fees, the district court issued a second order in which it assessed costs and attorneys' fees for the injunction proceeding in the amount of $11,920.41 against HEW. In so doing, the court expressly released the School Board from any liability for attorneys' fees. HEW appeals from the award of attorneys' fees against it. Plaintiff cross-appeals from the district court's refusal to impose attorneys' fees against the School Board as well as against HEW.[1]

---

1. Plaintiff argues for the first time on appeal that attorneys' fees should also have been

awarded against Dr. Bell in his individual capacity. Plaintiff did not plead for this relief in

## I.

██ 28 U.S.C. § 2412 provides in part:

Except as otherwise specifically provided by statute, a judgment for costs, as enumerated in section 1920 of this title but not including the fees and expenses of attorneys may be awarded to the prevailing party in any civil action brought by or against the United States or any agency or official of the United States acting in his official capacity, in any court having jurisdiction of such action.

This section has been consistently interpreted as preserving the sovereign immunity of the United States against awards of attorneys' fees absent a clear or express statutory waiver. *Alyeska Pipeline Service Co. v. Wilderness Society*, 421 U.S. 240, 267–68, 95 S.Ct. 1612, 1626–27, 44 L.Ed.2d 141 (1975). A waiver may arise in two ways. First, a statute may explicitly impose liability for attorneys' fees upon the United States.[2] Secondly, a waiver of immunity may arise by "necessary implication" from the context of the statute. *See Natural Resources Defense Counsel, Inc. v. EPA*, 484 F.2d 1331 (1st Cir. 1973).

██ Wholly apart from the question of sovereign immunity, another obstacle prevents federal court litigants from recovering attorneys' fees in most cases. Unlike the British courts, American courts traditionally have denied attorneys' fees to prevailing parties. *See Blue v. Bureau of Prisons*, 570 F.2d 529, 531–32 (5th Cir. 1978). Although courts have recognized exceptions to this "American Rule,"[3] the policy requiring each party to bear its own cost of counsel has remained largely intact.

In an effort to expand the class of prevailing parties entitled to recover attorneys' fees, federal courts developed the "private attorney general" theory, under which private litigants are compensated when they vindicate an important public policy. *See Fairley v. Patterson*, 493 F.2d 598, 606 (5th Cir. 1974). In *Alyeska Pipeline Service Co. v. Wilderness Society*, 421 U.S. 240, 95 S.Ct. 1612, 44 L.Ed.2d 141 (1975), however, the Supreme Court rejected this theory, and held that because Congress traditionally has enacted attorneys' fees provisions, and because federal courts are ill-equipped to "pick and choose" the public policy interests deserving of such added protection, federal courts should not "make major inroads on a policy matter that Congress has reserved for itself." 421 U.S. at 269, 95 S.Ct. at 1627. *See* 570 F.2d at 532.

## II.

██ In the present case, the district court referred to no statutory or other authority to support its award of attorneys' fees against HEW. Plaintiff argues that the Civil Rights Attorneys' Fees Awards Act of 1976, 42 U.S.C. § 1988, is such authority. The Awards Act, which was enacted largely in response to the Supreme Court's decision in *Alyeska*[4] provides in relevant part:

In any action or proceeding to enforce a provision of section [1983, 1985, 1986] the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs.

Plaintiff asserts that this language is sufficient to waive sovereign immunity for attorneys' fees. In *Hutto v. Finney*, 437 U.S. 678, 694, 98 S.Ct. 2565, 2575, 57 L.Ed.2d 522

---

2. For example, Titles II and VII of the Civil Rights Act of 1964 provides that the court may award attorneys' fees to a prevailing party as part of the costs, and that "the United States shall be liable for costs the same as a private person." 42 U.S.C. §§ 2000a–3(b), 2000e–5(k).

3. Bad faith on the part of the losing party is one exception; the so-called "common fund" doctrine is another, *see Hall v. Cole*, 412 U.S. 1, 93 S.Ct. 1943, 36 L.Ed.2d 702 (1973).

the district court and the record is devoid of any basis for such an award under the "bad faith" exception relied upon by plaintiff. *See Alyeska Pipeline Service Co. v. Wilderness Society*, 421 U.S. 240, 258–59, 95 S.Ct. 1612, 1622–23, 44 L.Ed.2d 141 (1975).

4. *See* H.Rep.No.94–1558, 94th Cong. 2d Sess. at 2 (1976); S.Rep.No.94–1011, 94th Cong. 2d Sess. at 1 (1976), U.S.Code Cong. & Admin. News 1976, p. 5908.

(1978), the Supreme Court held that the Awards Act evinced a congressional intent to subject the states to liability for attorneys' fees:

> The Act itself could not be broader. It applies to "any" action brought to enforce certain civil rights laws.

Plaintiff's interpretation is supported neither by *Hutto* nor by the language of the Act. In upholding an award of attorneys' fees against a state in *Hutto*, the Supreme Court placed controlling significance on the fact that, in enacting the Awards Act, Congress imposed attorneys' fees "as a part of costs." Whereas the states traditionally have been liable for costs without regard to claims of sovereign immunity, 98 S.Ct. at 2576, the federal government is liable for costs only to the extent authorized by statute, and section 2412 specifically excludes attorneys' fees from the costs for which immunity is waived. 28 U.S.C. § 2412. Consequently, that the Awards Act allows the recovery of attorneys' fees against the states does not, with respect to the federal government, compel a similar conclusion.

Comparison of the language of the Awards Act with other statutes allowing recovery of attorneys' fees further demonstrates the absence of legislative intent to waive federal sovereign immunity with respect to attorneys' fees. Although the Act's reference to "any action" certainly is broad, when waiving federal sovereign immunity for attorneys' fees in other statutes, Congress has spoken with unmistakable clarity. For example, Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e–5(k), provides in part that a reasonable attorneys' fee may be awarded as a part of the costs, and that "the United States shall be liable for costs the same as a private person." *See also,* 5 U.S.C. § 552(a)(4)(E); 42 U.S.C. §§ 2000a–3(b), 2000b–1. The Awards Act simply does not possess the same degree of specificity that Congress has deemed necessary when waiving federal sovereign immunity for attorneys' fees in other statutes, and therefore falls short of the "clear or express" language necessary to satisfy section 2412.

### III.

Plaintiff argues that if the "any action" language of the Awards Act does not constitute an express waiver of federal sovereign immunity for attorneys' fees, such a waiver nonetheless arises by "necessary implication" from the Act when read as a whole. In support of this argument, plaintiff stresses that the Awards Act is remedial in nature and should be liberally interpreted. Plaintiff also argues that because Congress enacted the Awards Act in direct response to *Alyeska*, the legislative intent was to remove *all* obstacles to recovery of attorneys' fees in civil rights cases, including that of federal sovereign immunity.

Although, as noted *supra*, there is strong support for the assertion that the Awards Act was enacted in response to *Alyeska*, plaintiff's argument confuses the preclusive effect of the "American rule" with that of section 2412. Whereas the "American rule" finds its origin in the traditional judicial deference of the courts to Congress' judgment in this area,[5] and, absent statutory exception, generally precludes recovery of attorneys' fees against *any* losing party, section 2412 simply preserves the sovereign immunity of the federal government against such awards. Indeed, the Supreme Court expressly recognized this distinction in *Alyeska*. In rejecting the private attorney general theory, the Court noted that judicial evisceration of the "American rule," even if approved, nonetheless would be insufficient to surmount the barrier to awards of attorneys' fees against the federal government that is presented by section 2412.[6]

Examination of the legislative history of the Awards Act is, at best, inconclusive.[7] Although plaintiff is correct in asserting

---

5. *See Alyeska Pipeline Service Co. v. Wilderness Society,* 431 U.S. at 247–63, 95 S.Ct. at 1616–1624.

6. 421 U.S. at 265–69, 95 S.Ct. at 1626–1627.

7. *See NAACP v. Civiletti,* 609 F.2d 514, 519–20 (D.C.Cir.1979).

that both the House and Senate floor debates demonstrate that several Congressmen and Senators believed that the Awards Act would waive the federal government's immunity against awards of attorneys' fees,[8] this belief was not universally held.[9] Moreover, examination of both the Senate and House Reports on the Awards Act does not support the conclusion that the Act, as enacted, was intended to waive federal sovereign immunity. Although both reports state that section 1988 was fashioned after the attorneys' fee provisions of the 1964 Civil Rights Act, which allows recovery against the United States, the simple fact is that those fee provisions expressly waive federal sovereign immunity for attorneys' fees, whereas the Awards Act does not. 42 U.S.C. §§ 2000a–3(b); 2000e–5(k).[10]

An example of waiver by "clear implication" does appear in the Awards Act, although not in the context of actions brought under the civil rights statutes in question:

> [I]n any civil action or proceeding, by or on behalf of the United States of America to enforce, or charging a violation of, a provision of the United States Internal Revenue Code ... the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs.

Certainly, this language does not contain an express waiver of federal sovereign immunity in tax cases. Such a waiver, however, is necessarily implied, because the above-quoted passage both limits its applicability to tax cases brought by the federal government, and specifically precludes the government from recovering attorneys' fees in those cases. Consequently, unless the language quoted above is to be rendered meaningless, a waiver in favor of prevailing taxpayers must be implied.[11]

In contrast to tax cases, of course, civil rights cases may be brought both by the government and by private individuals. Consequently, that the Awards Act prevents the government from recovering attorneys' fees in those cases does not compel the conclusion that Congress must have intended to waive federal sovereign immunity. We hold, therefore, that the Awards Act does not provide for a waiver of federal sovereign immunity for attorneys' fees in cases brought against the federal government under the civil rights statutes in question.[12] In so holding, we are acutely mindful of the many compelling policy reasons in support of waiving federal sovereign immunity for attorneys' fees in civil rights cases. When the federal government violates constitutional rights, private enforcement is the only effective means of vindication. We believe, however, that these arguments are best addressed to Congress.[13]

---

8. 122 Cong.Rec.S 16251 (daily ed. Sept. 21, 1976) (comments of Senator Hugh Scott); 122 Cong.Rec.H 12163–64 (daily ed. Oct. 1, 1976) (comments of Congressman Railsback).

9. *See* 122 Cong.Rec.H 12164 (daily ed. Oct. 1, 1976) (comments of Congressman Drinan); 122 Cong.Rec.S 16490 (daily ed. Sept. 23, 1976) (letter of Congressman Rodino).

10. *See* note 2, *supra*. The recent enactment of the Equal Access to Justice Act, Pub.L.No.96–481, § 201 *et seq.*, 49 U.S.L.W. 193–95 (Jan. 13, 1981) (to be codified in 28 U.S.C. § 2412), which, with exceptions, waives the federal government's immunity against awards of attorneys' fees in non-tort civil actions, is additional evidence that Congress did not intend that the Awards Act would have such an effect.

11. *See also Natural Resources Defense Counsel, Inc. v. EPA,* 484 F.2d 1331 (1st Cir. 1973) for an application of this principle to the Clean Air Act, 42 U.S.C. § 7604.

12. Both circuits that have addressed the issue have held that the Awards Act does not permit the recovery of attorneys' fees against the United States. *NAACP v. Civiletti,* 609 F.2d 514 (D.C.Cir.1979), *cert. denied,* 447 U.S. 922, 100 S.Ct. 3012, 65 L.Ed.2d 1114 (1980); *Shannon v. HUD,* 577 F.2d 854 (3d Cir.), *cert. denied* 439 U.S. 1002, 99 S.Ct. 611, 58 L.Ed.2d 677 (1978).

We need not, and do not, decide whether the Awards Act contains a waiver of immunity in other cases to which it is applicable. As noted *supra,* a strong case can be made that such a waiver arises by necessary implication in favor of prevailing taxpayers in cases brought to enforce the federal tax laws.

13. Indeed, these concerns motivated Congress to enact the Equal Access to Justice Act. *See* note 10, *supra*; Pub.L. 96–481, § 202(a).

## IV.

Plaintiff cross-appeals from the district court's refusal to award attorneys' fees against the School Board. The district court explained its reasons for exempting the Board from liability for attorneys' fees as follows:

[T]he only thing that necessitated the East Baton Rouge Parish School Board being a defendant in this suit was the fact that [HEW] . . ., improperly, illegally, and without regard for the rights of the [School Board] . . . threatened the School Board with deprivation of funds to which it was entitled if it permitted [plaintiff] to hold a meeting on school property.

This threat was far in excess of any authority, under the circumstances, that [HEW] had. However, in view of the magnitude of the threat, the School Board was compelled, as a practical necessity, to comply with the wishes of [HEW].

.     .     .     .     .

Under all of these circumstances, it was, and is, the opinion of this Court that it would be a miscarriage of justice to cast the [School Board] for any of the costs or attorney fees incurred in this suit.

In assessing the district court's conclusions, the chain of events may be outlined as follows: After plaintiff had secured permission from the Board to hold its rally on November 22, 1975, Dr. Bell of HEW sent two telegrams to the School Board, the first on November 19 and the second on November 21. Although the first telegram, which led to the Board's cancellation of the rally, informed the Board that use of the school grounds by plaintiff would result in retaliation by HEW, the second telegram acknowledged that HEW could not require the Board to act in an unconstitutional manner. Three months later, on February 19, 1976, the Board adopted the policy, admittedly unconstitutional, which was the subject of the injunction subsequently issued by the district court.

In support of the district court's decision to exempt the School Board from liability for attorneys' fees, the Board invokes the principle that, although a district court ordinarily should award attorneys' fees to a prevailing party under the Awards Act, the court should not do so when "special circumstances" would render an award "unjust." *See* S.Rep.No.94–1011, 94th Cong. 2d Sess. 5 (1976), *quoting Newman v. Piggie Park Enterprises, Inc.,* 390 U.S. 400, 402, 88 S.Ct. 964, 966, 19 L.Ed.2d 1263 (1968). It does not appear, however, that such circumstances are present in this case.

In holding that the Board was not at fault in refusing to allow plaintiff to use the school facilities, the district court apparently focused upon the circumstances surrounding the Board's November 20 cancellation of its earlier permission. This reasoning, however, ignores the events that occurred following the Board's decision to rescind its consent to plaintiff's use of the school facilities. Notwithstanding the pressures that the Board may have been under at the time it revoked its consent, and regardless of the extent to which it may be said that HEW's actions encouraged the Board to act in that manner, it is beyond dispute that, after almost three months to reflect upon the problem, the Board alone formulated and enforced the policy that later was held unconstitutional. In *Brown v. Culpepper,* 559 F.2d 274, 278 (5th Cir. 1977) this Court held that a "defendant's conduct, be it negligent or intentional, in good faith or bad, is irrelevant to an award of attorneys' fees" under the Awards Act. This principle is fully applicable to the Board's adoption, albeit in good faith, of the unconstitutional policy. Similarly, that the Board adopted the policy pursuant to its official duty, and under the belief that it was necessary to satisfy its obligations under the statutes authorizing its federal funding, does not compel a finding of "special circumstances." Ultimately, the decision was one for the Board alone to make.[14]

**14.** It should be noted that the School Board was not completely powerless to resist HEW's

threats. Regulations promulgated pursuant to the Emergency School Aid Act and Title VI

*See Johnson v. State of Mississippi,* 606 F.2d 635 (5th Cir. 1979).

The "special circumstances" exception to the general rule of awarding attorneys' fees to a prevailing party is an extremely limited one, and is applied only in unusual cases. In *Riddell v. National Democratic Party,* 624 F.2d 539, 544–45 (5th Cir. 1980), this Court reviewed the decisions of other courts addressing the "special circumstances" exception and concluded that they fall into two categories: (1) situations in which, although clothed as a claim under section 1983, plaintiff's lawsuit sought to recover for what essentially was a private state law tort claim for money damages, and (2) those in which, although plaintiffs received the benefits sought to be obtained by the lawsuit, their efforts did not contribute to achieving those results. Like *Riddell,* "[t]he situation presented in this appeal does not involve any of these reasons for recognizing special circumstances sufficient to deny an award of attorneys' fees." 624 F.2d at 545.

The Board also argues that attorneys' fees should not be awarded in this case because the lawsuit was pending on the effective date of the Awards Act. In *Rainey v. Jackson State College,* 551 F.2d 672 (5th Cir. 1977), however, this Court held that the legislative history of the Awards Act authorizes retroactive fee awards unless such an award would be "manifestly unjust." *See also Hutto v. Finney,* 437 U.S. 678, 98 S.Ct. 2565, 57 L.Ed.2d 522 (1978); *Universal Amusement Co., Inc. v. Vance,* 559 F.2d 1286 (5th Cir. 1977), *cert. denied,* 442 U.S. 929, 99 S.Ct. 2859, 61 L.Ed.2d 296. The Board has not attempted to demon-strate how retroactive application of the Awards Act would be more burdensome or unfair in this case than it would in any other. Consequently, we hold that the district court erred in failing to award attorneys' fees against the School Board.[15]

Although the district court found that an award of $11,920.41 in attorneys' fees against HEW was reasonable, it does not necessarily follow that such an amount would be a reasonable award against the School Board. Moreover, in fixing the amount of attorneys' fees awardable to plaintiff, the district court failed to consider and make findings consistent with this Court's decision in *Johnson v. Georgia Highway Express Co., Inc.,* 488 F.2d 714 (5th Cir. 1974). We therefore reverse the award of $11,920.41 against HEW, and remand to the district court to determine what amount, if any, of attorneys' fees reasonably may be assessed against the Board.

REVERSED IN PART; REVERSED AND REMANDED IN PART.

GOLDBERG, Circuit Judge, concurring in part and dissenting in part:

I concur in part IV of the majority's opinion, awarding attorneys' fees against the East Baton Rouge Parish School Board. However, I dissent from parts I–III of the majority decision, finding the United States Department of Health, Education and Welfare (HEW) immune from paying attorneys' fees. My reasons for finding HEW liable for the payment of attorneys' fees have been fully detailed in Judge Wright's dissenting opinion in *NAACP v. Civiletti,* 609 F.2d 514, 521 (D.C.Cir.1979), *cert. de-*

provide for administrative procedures incident to the termination of federal funding. *See* 45 C.F.R. Parts 16, 80, 100–49, § 185.45.

15. In so holding, this Court is reminded of a quotation from Justice Douglas' dissenting opinion in *Dennis v. United States,* 341 U.S. 494, 71 S.Ct. 857, 905, 95 L.Ed. 1137 (1951):
 [W]e have trusted the common sense of our people to choose the doctrine true to our genius and to reject the rest. This has been the single outstanding tenet that has made our institutions the symbol of freedom and equality. We have deemed it more costly to

liberty to suppress a despised minority than to let them vent their spleen.
The first amendment does not permit this Court, any more than a federal or state governmental body, or anyone else, to selectively administer the law based upon the degree to which the beliefs of a particular individual or organization coincide with those of the public at large. Incompatible to traditional notions of democracy as one may find the principles espoused by plaintiff, it stands before this Court on equal footing with every other litigant.

*nied*, 447 U.S. 922, 100 S.Ct. 3012, 65 L.Ed.2d 1114 (1980). It would be an unnecessary act to add a jot or tittle thereto.