[No. B025076. Second Dist., Div. Seven. Mar. 21, 1988.]

VIVIAN LORENE McMAHON et al., Plaintiffs and Appellants, v. RALPH LOPEZ et al., Defendants and Respondents.

## COUNSEL

Malley, Scott & Koffman, Richard Stanley Scott and Robyn McDonald Schiffman for Plaintiffs and Appellants.

John K. Van de Kamp, Attorney General, Charlton G. Holland III, Assistant Attorney General, John Davidson and Harlan E. Van Wye, Deputy Attorneys General, De Witt W. Clinton, County Counsel, Steven J. Carnevale, Deputy County Counsel, Weissburg & Aronson and Jay N. Hartz for Defendants and Respondents.

## OPINION

**LILLIE, P. J.**—Plaintiffs appeal from an order denying their motion for attorney fees[1] pursuant to 42 United States Code section 1988 (the Civil Rights Attorneys' Fees Awards Act).

### FACTS

Avis Flott, Vivian McMahon and Florence DuBois sued El Monte Golden Age Convalescent Hospital (hospital), the State of California, the County of Los Angeles and officials of the state and county for injunctive relief and damages.

The verified complaint, filed in August 1986, alleged by way of background the following facts common to all causes of action: Plaintiffs McMahon and DuBois are daughters of plaintiff Avis Flott; McMahon is Flott's proposed guardian ad litem. Avis Flott, a woman 77 years of age, is a

---

[1] Inasmuch as the attorney fee issue required a judicial determination, " 'any order made with respect thereto is appealable as a final determination on a collateral matter, severable from the general subject of the litigation. [Citations.]' [Citation.]" (*Smith* v. *Krueger* (1983) 150 Cal.App.3d 752, 756 [198 Cal.Rptr. 174].)

patient in defendant hospital, a convalescent home or skilled nursing facility. Avis Flott is in a comatose and unresponsive condition and has been in such condition since her admission to the hospital in early 1979. The hospital is licensed by defendants state and county and is extensively regulated by them. Flott enjoyed good health until December 12, 1978, when she was struck by a car. As a result of that impact Flott suffered such extensive brain damage that she never since has regained consciousness, has had no meaningful interaction with her environment, has not spoken, and is totally unable to care for her bodily needs. While Flott is not "brain dead," her central nervous system is profoundly and irreversibly damaged. She is intubated with a nasogastric tube which enters through her nose, passes down the back of her throat to her esophagus and into her stomach. Through this tube fluids and nourishment are regularly administered to Flott as she is unable to eat or swallow anything on her own. Throughout her adult life Flott told members of her family and others that she wished never to be maintained in a helpless condition, to be kept alive by any artificial means, or to become a long-term patient in a nursing home. Flott extracted promises from both her daughters not to let any of these things happen. When she was injured her husband was ill with cardiac disorder. However, in response to his wife's illness Mr. Flott rallied and visited her daily, first in an acute-care facility and later in defendant hospital, acquiring emotional support and meaning in his life from the visits. For this reason neither McMahon nor DuBois insisted that the promise they made to their mother be implemented during Mr. Flott's lifetime. In April 1986 Mr. Flott died. Shortly after his death McMahon and DuBois discussed with various officials of defendant hospital the removal of the nasogastric tube from Avis Flott. Citing various legal and ethical problems, and particularly problems with licensing and inspection agencies run by defendants state and county, the hospital refused the request to remove the tube.

The foregoing allegations were incorporated by reference into causes of action for violation of Avis Flott's constitutional rights of liberty and privacy, violation of her civil rights under 42 United States Code section 1983, injunctive relief, battery, breach of fiduciary duty, intentional infliction of emotional distress, and conspiracy to commit the wrongful acts alleged.

Based on the alleged violations of constitutional rights and federal civil rights, plaintiffs moved for a preliminary injunction forbidding the maintenance or replacement of a nasogastric tube in the body of Avis Flott and restraining defendants from providing any hydration and nutrition to her unless specifically authorized by McMahon and DuBois. The motion was supported by declarations of McMahon, DuBois and other members of Avis Flott's family. The declarations stated that Avis Flott expressed the wish that her life not be artificially sustained and that personnel of

defendant hospital refused to honor that wish as related to them by plaintiff McMahon. Richard Scott, plaintiffs' attorney, submitted his declaration in support of the motion wherein he stated: On July 25, 1986, he and plaintiffs McMahon and DuBois met with representatives of the hospital in an attempt to secure removal of the nasogastric tube from the body of Avis Flott. The hospital's management group and attorney were concerned about "doing the right thing by their patient"; they were also concerned about what position would be taken by officials from the county Department of Health Services and health officials from the state. On August 7, 1986, counsel for the hospital notified Scott that "appropriate" people in the state Department of Health declined to offer any opinion on the permissibility of removal or clamping of Avis Flott's feeding tube, and would evaluate the situation only "after the fact." Plaintiffs' motion for preliminary injunction was opposed by defendants hospital, state and county. The court determined that plaintiffs made a sufficient showing to warrant an injunction for removal of the nasogastric tube from Avis Flott. Accordingly, on October 7, 1986, the court issued an order for preliminary injunction directing defendant Kurt Gunther, M.D., to write an order requiring withdrawal of the tube from the body of Avis Flott and enjoining the state and county from commencing any disciplinary, administrative or civil action against the hospital, its agents or employees based on their compliance with the order. The order was stayed until October 24, 1986, to allow any party aggrieved by it to petition the appellate court for relief.

During the stay, on October 15, 1986, Avis Flott died of aspiration pneumonia.

In November 1986 the remaining plaintiffs moved for an award of attorney fees pursuant to 42 United States Code section 1988. The trial court denied the motion on the following grounds: (1) Because Avis Flott is deceased, any right of recovery she may have must be pursued by her executor or administrator (Code Civ. Proc., § 385; Prob. Code, § 573); (2) plaintiffs failed to establish that they prevailed on the merits of their claim of violation of constitutional rights; (3) special circumstances exist warranting denial of attorney fees, including the fact that all defendants acted with the intent and purpose of complying with the law.

## DISCUSSION

### I

Section 1988 of title 42 of the United States Code provides in pertinent part: "In any action or proceeding to enforce a provision of sections 1981, 1982, 1983, 1985, and 1986 of this title, title IX of Public Law 92-318,

or title VI of the Civil Rights Act of 1964, the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs."[2] Thus, a plaintiff must be a prevailing party to recover attorney fees under section 1988. (*Hensley* v. *Eckerhart* (1983) 461 U.S. 424, 433 [76 L.Ed.2d 40, 50, 103 S.Ct. 1933].) " '[P]laintiffs may be considered "prevailing parties" for attorney's fees purposes if they succeed on any significant issue in litigation which achieves some of the benefit the parties sought in bringing suit.' [Citation.]" (*Ibid.,* fn. omitted.) Even preliminary relief may make a plaintiff a prevailing party under the statute; the lawsuit need not proceed to completion. (*Doe* v. *Marshall* (5th Cir. 1980) 622 F.2d 118, 120.) The proper focus is whether the plaintiff has been successful on the central issue, as shown by the fact that he has obtained the primary relief sought. (*Iranian Students Ass'n* v. *Edwards* (5th Cir. 1979) 604 F.2d 352, 353.)

■ It is apparent from a reading of the complaint that the principal relief sought was the removal of the nasogastric tube from the person of plaintiff Avis Flott. By securing a preliminary injunction granting that relief plaintiffs were prevailing parties within the meaning of section 1988. "The right to refuse medical treatment is basic and fundamental. It is recognized as a part of the right of privacy protected by both the state and federal constitutions. [Citations.]" (*Bouvia* v. *Superior Court* (1986) 179 Cal.App.3d 1127, 1137 [225 Cal.Rptr. 297]; see also *Bartling* v. *Superior Court* (1984) 163 Cal.App.3d 186, 195 [209 Cal.Rptr. 220].) The complaint alleged violation of plaintiff Avis Flott's constitutional right of privacy by defendants' refusal to remove the nasogastric tube from her body. Plaintiffs sought a preliminary injunction to redress the deprivation of that right by forcing defendant hospital to remove the tube. Therefore, while the trial court correctly noted that plaintiffs McMahon and DuBois did not establish a violation of *their* constitutional rights, it is clear that by granting the preliminary injunction the court necessarily determined the hospital's refusal to remove the tube was a violation of plaintiff Flott's constitutional right of privacy, which right would have been restored to her by the injunction

---

[2] Plaintiffs' motion for attorney fees was based on their cause of action for violation of 42 United States Code section 1983 which reads in part: "Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress. ·. . ."

State courts possess jurisdiction concurrent with federal courts to hear claims under section 1983 and the fee provision of section 1988 is part of the 1983 remedy whether the action is brought in federal or state court. (*Maine* v. *Thiboutot* (1980) 448 U.S. 1, 10-11 [65 L.Ed.2d 555, 563, 100 S.Ct. 2502]; *EWAP, Inc.* v. *City of Ontario* (1986) 177 Cal.App.3d 1108, 1112 [223 Cal.Rptr. 422].)

had she lived. Section 1988 does not create a new cause of action that abates upon the death of the prevailing party; rather, his claim for attorney fees survives his death. (*Herrera* v. *Valentine* (8th Cir. 1981) 653 F.2d 1220, 1232-1233; see also Prob. Code, § 573.) Accordingly, plaintiff Flott's status as a prevailing party supports the right of the representative of her estate to recover attorney fees under section 1988.[3]

## II

While section 1988 gives a trial court discretion in deciding whether to award attorney fees to a prevailing party, that discretion is narrowly limited. (*Bonnes* v. *Long* (4th Cir. 1979) 599 F.2d 1316, 1318.) The controlling standard is that a prevailing plaintiff "should ordinarily recover an attorney's fee unless special circumstances would render such an award unjust." (*Newman* v. *Piggie Park Enterprises* (1968) 390 U.S. 400, 402 [19 L.Ed.2d 1263, 1266, 88 S.Ct. 964].) Section 1988 requires a strong showing of special circumstances to justify denying an award of attorney fees to the prevailing party in a section 1983 claim. (*Riddell* v. *National Democratic Party* (5th Cir. 1980) 624 F.2d 539, 543.) The trial court here found special circumstances warranting denial of attorney fees in that "all defendants acted with the intent and purpose of complying with the law." However, good faith is not a special circumstance justifying denial of attorney fees under section 1988. (*J & J Anderson, Inc.* v. *Town of Erie* (10th Cir. 1985) 767 F.2d 1469, 1474.) Those cases which have recognized special circumstances sufficient to deny an award of attorney fees to a prevailing party show that such special circumstances arise only in unusual situations of the sort not present in the instant case. (See *Riddell* v. *National Democratic Party, supra,* 624 F.2d 539, 544-545, and cases there cited and discussed.)

In further support of its denial of attorney fees on the ground of special circumstances, the trial court cited *Naprstek* v. *City of Norwich,* (N.D.N.Y. 1977) 433 F.Supp. 1369, wherein an award of attorney fees was denied to a prevailing plaintiff who sued to invalidate on vagueness grounds an antiquated and rarely enforced juvenile curfew ordinance. *Naprstek* is not authority for the denial of attorney fees in the present case on the ground of special circumstances. Unlike the situation there, the right plaintiffs were successful in enforcing by preliminary injunction was the constitutional right of privacy, a vital right relevant in modern-day life which is recognized and enforced by the courts of this state. (See *Bouvia* v. *Superior Court,*

---

[3] At the hearing on the motion for attorney fees the court noted the existence of a procedural problem in that no representative of plaintiff Flott's estate was substituted as a plaintiff in her place. (See Code Civ. Proc., § 385.) However, the court denied the motion on its merits, not because of such procedural deficiency.

*supra,* 179 Cal.App.3d 1127; *Bartling* v. *Superior Court, supra,* 163 Cal.App.3d 186.)

III

Each of the defendants argues that attorney fees may not be awarded against it under section 1988 because it does not come within the terms of section 1983.

A. *Defendant Hospital*

■ The hospital contends section 1983 is inapplicable as to it because it was not acting under color of state law in refusing to remove the nasogastric tube from plaintiff Flott.

A prerequisite for any relief under section 1983 is that the defendant acted under color of state law. (*Graseck* v. *Mauceri* (2d Cir. 1978) 582 F.2d 203, 207.) This requirement of section 1983 is the equivalent of the "state action" element of the Fourteenth Amendment and, accordingly, section 1983 is not invoked by purely private conduct. (*Briley* v. *State of Cal.* (9th Cir. 1977) 564 F.2d 849, 855.) In an effort to show that defendant hospital acted under color of state law in refusing to remove the feeding tube, plaintiffs alleged that the hospital is licensed by the state (see Health & Saf. Code, §§ 1254, 1250, subd. (c)), is extensively regulated by both the state and the county, and receives substantial state or federal funds for the operation of its facility. However, the mere fact that a defendant holds state licenses which permit it to conduct its business does not establish that it is acting under color of state law for section 1983 purposes. (*Jenkins* v. *White Castle Systems, Inc.* (N.D.Ill. 1981) 510 F.Supp. 981, 982; *Holmes* v. *Elks Club, Inc.* (M.D.Fla. 1975) 389 F.Supp. 854, 855.) Likewise, pervasive state regulation, without more, is insufficient to constitute state action. (*Magill* v. *Avonworth Baseball Conference* (3d Cir. 1975) 516 F.2d 1328, 1332.) Nor does a defendant act under color of state law by virtue of the financial benefit it receives from the state. (*Lefcourt* v. *Legal Aid Society* (2d Cir. 1971) 445 F.2d 1150, 1155 .) "[A]lthough it is apparent that nursing homes in New York are extensively regulated, '[t]he mere fact that a business is subject to state regulation does not by itself convert its action into that of the State for purposes of the Fourteenth Amendment.' [Citation.] The complaining party must also show that 'there is a sufficiently close nexus between the State and the challenged action of the regulated entity so that the action of the latter may be fairly treated as that of the State itself.' . . . [¶] . . . [A] State normally can be held responsible for a private decision only when it has exercised coercive power or has provided such significant encouragement, either overt or covert, that the choice must in law be deemed

to be that of the State." (*Blum* v. *Yaretsky* (1982) 457 U.S. 991, 1004 [73 L.Ed.2d 534, 546, 102 S.Ct. 2777].)

According to the declarations submitted in support of plaintiffs' motion for preliminary injunction, the state declined to offer any opinion on the permissibility of removing the nasogastric tube from the person of Avis Flott, preferring instead to evaluate the situation after the act was done. There is thus a total lack of the required nexus between the action of the state and the refusal of the hospital to remove the tube; indeed, the evidence presented by plaintiffs shows that the state totally removed itself from the controversy surrounding removal of the tube. The hospital did not act under color of state law in refusing to remove the tube and therefore it cannot be said that plaintiffs prevailed against the hospital in their section 1983 claim.

B.   *Defendants State And County*

■   While municipalities and other local government units are included among those persons to whom section 1983 is applicable (*Monell* v. *New York City Dept. of Social Services* (1978) 436 U.S. 658, 690 [56 L.Ed.2d 611, 635, 98 S.Ct. 2018]), states and counties are not persons amenable to suit under section 1983. (See *Kurz* v. *State of Michigan* (6th Cir. 1977) 548 F.2d 172, 174; *Cheramie* v. *Tucker* (5th Cir. 1974) 493 F.2d 586, 587-588; *Monell, supra,* 436 U.S. at p. 160, fn. 54 [56 L.Ed.2d at p. 635].)

Plaintiffs also sued state and county officers in their individual and official capacities.   ■   "Personal-capacity suits seek to impose personal liability upon a government official for actions he takes under color of state law. [Citation.] Official-capacity suits, in contrast, 'generally represent only another way of pleading an action against an entity of which an officer is an agent.' [Citation.] As long as the government entity receives notice and an opportunity to respond, an official-capacity suit is, in all respects other than name, to be treated as a suit against the entity. . . . [¶] On the merits, to establish *personal* liability in a § 1983 action, it is enough to show that the official, acting under color of state law, caused the deprivation of a federal right." (*Kentucky* v. *Graham* (1985) 473 U.S. 159, 165-166 [87 L.Ed.2d 114, 121-122, 105 S.Ct. 3099]; original italics.) There was no showing that any of the state and county officials sued by plaintiffs was in any way responsible for the hospital's refusal to remove the nasogastric tube from Avis Flott.

IV

■   An appellate court reviews the action of a trial court, not its legal reasoning. (*In re Marriage of Fithian* (1977) 74 Cal.App.3d 397, 402 [141

Cal.Rptr. 506].) Accordingly, a lower court decision will not be overturned merely because given for a wrong reason. If right upon any theory of the law applicable to the case, it must be sustained regardless of the considerations which may have moved the court to its conclusion. (*D'Amico* v. *Board of Medical Examiners* (1974) 11 Cal.3d 1, 18-19 [112 Cal.Rptr. 786, 520 P.2d 10]; *Maruman Integrated Circuits, Inc.* v. *Consortium Co.* (1985) 166 Cal.App.3d 443, 450 [212 Cal.Rptr. 497].) While the order denying attorney fees is not sustainable upon the grounds expressed by the trial court, the order nevertheless must be affirmed inasmuch as plaintiffs did not prevail against any of the defendants under the provisions of section 1983. "[W]here a defendant has not been prevailed against, either because of legal immunity or on the merits, § 1988 does not authorize a fee award against that defendant. [Citation.]" (*Kentucky* v. *Graham, supra,* 473 U.S. at p. 165 [87 L.Ed.2d at p. 121].)

## DISPOSITION

The order is affirmed.

Thompson, J., and Johnson, J., concurred.