**REVISED NOVEMBER 21, 2002**

**UNITED STATES COURT OF APPEALS
FIFTH CIRCUIT**

_____

No. 01-11380

_____

DEBRA WALKER; ET AL,

Plaintiffs,

DEBRA WALKER; JEANETTE WASHINGTON; HAZEL WILLIAMS; ZELMA LANG; RENITA BROWN; LILLIE THOMPSON,

Plaintiffs - Appellees,

TRACEY SMITH,

Intervenor Plaintiff - Appellee,

versus

CITY OF MESQUITE, TX; ET AL,

Defendants,

versus

HIGHLANDS OF MCKAMY IV AND V COMMUNITY IMPROVEMENT ASSOCIATION; GINGER LEE; PRESTON HIGHLANDS HOMEOWNERS' ASSOCIATION, INC; DAVID BEER,

HIGHLANDS OF MCKAMY IV AND V COMMUNITY IMPROVEMENT ASSOCIATION; GINGER LEE; PRESTON HIGHLANDS HOMEOWNERS' ASSOCIATION, INC; DAVID BEER,

Plaintiffs - Appellants,

versus

THE HOUSING AUTHORITY OF THE CITY OF DALLAS,

Defendant - Appellee.

Appeal from the United States District Court
For the Northern District of Texas

November 19, 2002

Before EMILIO M. GARZA, and CLEMENT, Circuit Judges, and HUDSPETH[*], District Judge.

EMILIO M. GARZA, Circuit Judge:

This case arises from ongoing litigation between a class of plaintiffs (the "Walker plaintiffs") and the Dallas Housing Authority (DHA), the United States Department of Housing and Urban Development (HUD), and the City of Dallas (collectively, "the defendants"). In the primary litigation, the defendants were found liable for unconstitutional racial discrimination and segregation in Dallas's

---

[*] District Judge of the Western District of Texas, sitting by designation.

public housing programs. The result was a remedial order from the district court that, in relevant part, ordered DHA to construct or acquire public housing projects in "predominantly white" neighborhoods.

Two homeowners and their homeowners' associations (collectively, the "Homeowners") then sued for declaratory and injunctive relief to prevent construction of these new projects adjacent to their neighborhoods. The Homeowners challenged the remedial order as unconstitutional. In a separate action, the Walker plaintiffs sought declaratory relief that the remedial order was constitutional. The district court found against the Homeowners and for the Walker plaintiffs in the two actions, respectively. The Homeowners appealed, and we partially vacated the remedial order, reversed the declaratory judgment, and remanded for revision of the order. A more thorough recitation of the facts and issues of this complicated case can be found in our decision, *Walker v. City of Mesquite*, 169 F.3d 973 (5th Cir. 1999).

Upon remand, the district court modified the remedial order to comply with our instructions. The Homeowners next sought attorney's fees in excess of a quarter of a million dollars from the DHA under 42 U.S.C. § 1988. The district court denied fees, holding that (1) the Homeowners were not a "prevailing party" within the meaning of § 1988; (2) special circumstances existed which made it unjust to impose fees upon the DHA; and (3) the Homeowners' fee request had not been appropriately substantiated. *See Walker v. HUD*, No. 3-85-CV-1210-R, 3-96-CV-1866-R, 2001 WL 1148109 (N.D. Tex. Sept. 18, 2001). The propriety of § 1988 attorney's fees for the Homeowners is the primary issue in this appeal.

Section 1988 provides in relevant part: "In any action or proceeding to enforce a provision of [§ 1983], the court, in its discretion, may allow the prevailing party, other than the United States,

a reasonable attorney's fee as part of the costs." A litigant is not eligible for attorney's fees unless it is a "prevailing party." *Hewitt v. Helms*, 482 U.S. 755, 759 (1987). In *Hewitt*, the Supreme Court held that, at a minimum, a plaintiff must receive "some relief on the merits of his claim" in order to prevail. *Id.* at 760. *Texas State Teachers Ass'n v. Garland Independent School District*, 489 U.S. 782 (1989), reaffirmed the floor set in *Hewitt* and noted that the plaintiff must be able to point to "a resolution of the dispute which changes the legal relationship between itself and the defendant." *Id.* at 791-92. In fact, *Texas State Teachers* characterized the "touchstone" of the prevailing party inquiry as whether there was a "material alteration of the legal relationship of the parties." *Id.* at 792-93.

Three years later, the Court returned to this issue in *Farrar v. Hobby*, 506 U.S. 103 (1992). *Farrar* provided one of the clearest formulations of the prevailing party jurisprudence. To qualify as a prevailing party, the plaintiff must (1) obtain actual relief, such as an enforceable judgment or a consent decree; (2) that materially alters the legal relationship between the parties; and (3) modifies the defendant's behavior in a way that directly benefits the plaintiff at the time of the judgment or settlement. *Id.* at 111-12. Most recently, in *Buckhannon Board and Care Home, Inc. v. West Virginia Department of Health and Human Resources*, 532 U.S. 598 (2001), the Court reaffirmed that both judgments on the merits and settlement agreements enforced through consent decrees were sufficient to create a prevailing party. *Id.* at 604. Again, the Court stated that the awarded relief for which fees were sought must materially alter the "legal relationship of the parties." *Id.* (citing *Texas State Teachers*, 489 U.S. at 792-93).

In this case, the Homeowners sought declaratory relief, alleging the remedial order was unconstitutional because it included race-based distinctions and was not narrowly tailored. They also

sought a temporary restraining order, a preliminary injunction, and a permanent injunction to prevent the DHA from purchasing and/or constructing public housing on the disputed sites. The district court denied the Homeowners the relief they sought and, in response to the Walker plaintiffs' suit, declared the remedial order constitutional. On appeal, we partially vacated the district court's remedial order, reversed the declaratory judgment, and stayed the construction of the housing projects until the district court revised the order. Our opinion also included a detailed discussion of how the remedial order sho uld be reformulated. Specifically, we held that the race-based portion of the order was unconstitutional because "there are promising, non-racially discriminatory ways to continue desegregating public housing in Dallas." *Walker*, 169 F.3d at 987. Upon remand, the Walker plaintiffs proposed detailed modifications to the remedial order, and the district court ultimately vacated the provisions of the order that contained the "predominantly white" requirement. In short, the Homeowners achieved exactly the outcome they desired. Thus, the district court erred when it held that the Homeowners were not a prevailing party.

The DHA argues that the Homeowners cannot be a prevailing party because our holding was not "judicial relief" for the purposes of § 1988. We find this argument to be without merit. Although the permanent injunction sought by the Homeowners was never granted, this court held, as a matter of law, that the remedial order was unconstitutional for precisely the reasons argued by the Homeowners in their request for declaratory relief. On its face, our ruling entitled the Homeowners to relief. Thus, the district court's ultimate vacation of the offending provisions of the order is the functional equivalent of an enforceable judgment for the Homeowners and against the DHA.[1] As to

[1] The Homeowners did not simply achieve a favorable statement of the law or a temporary stay, as suggested by the DHA in its brief. This court's finding that the remedial order was unconstitutional, and the district court's later modification of that order to comply with our ruling

the second and third requirements of the prevailing party test, there can be no doubt that the Homeowners' suit both materially altered the legal relationship between the DHA and the Homeowners and directly benefitted the Homeowners at the time of the judgment. The Homeowners suit was not only a "substantial factor" in achieving reformation of the unconstitutional order, it was arguably the only factor. *See Foreman v. Dallas County*, 193 F.3d 314, 321(5th Cir. 1999) (citation omitted).

Notwithstanding the Homeowners' status as a prevailing party, attorney's fees should not be awarded if "special circumstances would render such an award unjust." *Hensley v. Eckerhart*, 461 U.S. 424, 429 (1983) (citation omitted); *Newman v. Piggie Park Enters.*, 390 U.S. 400, 402 (1968). The district court adopted the magistrate judge's conclusions that the DHA should not be liable for fees because it was faced with the unattractive choice of either violating the district court's remedial

---

is distinguishable from the cases cited by the DHA. In *Hewitt*, the prisoner plaintiff had only obtained an "interlocutory ruling that his complaint should not have been dismissed for failure to state a constitutional claim." 482 U.S. at 760. Upon remand, the district court again granted summary judgment for the defendants because they were found to have qualified immunity. The bureau of corrections ultimately revised its regulations to respond to some of the constitutional issues raised by the prisoner, but the Supreme Court held that the plaintiff's failure to achieve either an award of damages or the injunctive and declaratory relief he sought did not render him a prevailing party. *Id.*; *see also Buckhannon*, 532 U.S. at 605-10 (rejecting the "catalyst theory" that a suit which ultimately results in the amendment of a law or regulation through non-judicial channels is enough to render a party "prevailing" within the meaning of § 1988). The DHA next cites *Buckhannon* for the proposition that a party has not prevailed if it only secures the reversal of a directed verdict or a pronouncement that the defendant violated the Constitution *unaccompanied* by judicial relief. 532 U.S. at 605-06. In fact, *Buckhannon* does indicate that fees are only appropriate when the plaintiff has received a judgment on the merits or a court-ordered consent decree. *Id.* As explained above, however, the Homeowners not only secured the reversal of the declaratory judgment but also achieved a partial vacation of the remedial order and the ultimate revision of that order in the district court. Thus, our pronouncement on the constitutionality of the order was accompanied by the district court's "*judicial* relief" modifying the order. *See Buckhannon*, 532 U.S. at 606 (citation omitted) (emphasis in *Buckhannon*); *see also Hanrahan v. Hampton*, 446 U.S. 754, 757 (1980) (*per curiam*) (holding that a party can prevail on the merits of his claims in the trial court or on appeal).

order or obeying the order and exposing itself to potential liability for the fees and expenses of the Homeowners. *Walker v. HUD*, 2001 WL 1148109, at *2-3. We have repeatedly held that a state actor's good faith compliance with an official or legal requirement that is unconstitutional is not a special circumstance that justifies the denial of attorney's fees. *See Espino v. Besteiro*, 708 F.2d 1002, 1005-06 (5th Cir. 1983); *Riddell v. Nat'l Democratic Party*, 624 F.2d 539, 545-46 (5th Cir. 1980); *Johnson v. Mississippi*, 606 F.2d 635, 637 (5th Cir. 1979). Additionally, the DHA did not litigate the unconstitutional terms of the remedial order; it instead chose not to contest the Walker plaintiffs' motion for summary judgment. *See Walker*, 169 F.3d at 977. Given the DHA's ongoing involvement in this litigation, it seems particularly inappropriate to deny the Homeowners attorney's fees because the DHA acquiesced to a remedy that infringed upon the Homeowners' rights.[2] Thus, the special circumstances cited by the district court in this case are insufficient to justify the denial of an award of attorney's fees.

Finally, the district court found that the Homeowners' fee request should be denied because they failed to substantiate their request under well-established principles. Generally, the magistrate judge found, and the district court agreed, that the Homeowners' attorneys did not exercise "billing judgment" because they did not document both the hours charged and the hours written off and they included non-legal hours in their submissions, including time billed for drafting press releases and preparing for a media interview. *Walker v. HUD*, 2001 WL 1148109, at *3-4. In addition, the Homeowners were found to have requested fees for time spent on issues that were not pursued and

---

[2] The district court also held that, if the DHA was liable under § 1988, the fees recoverable by the Homeowners should be reduced *pro rata* because the Walker plaintiffs were also responsible for the remedial order. *Walker v. HUD*, 2001 WL 1148109, at *3. We note that the Walker plaintiffs cannot be jointly and severally liable for attorney's fees with the DHA because they are not state actors under § 1983 and because the Homeowners did not seek any relief from the Walker plaintiffs.

time spent exclusively on responding to motions and issues raised by the Walker plaintiffs, and not by the DHA.

The district court is correct that "[t]he plaintiffs are charged with the burden of showing the reasonableness of the hours they bill and, accordingly, are charged with proving that they exercised billing judgment." *Walker v. HUD*, 99 F.3d 761, 770 (5th Cir. 1996) (dealing with an earlier stage of this same litigation that related to the Walker plaintiffs' request for § 1988 fees from the defendants). If there is no evidence of billing judgment, however, then the proper remedy is not a denial of fees, but a reduction of "the hours awarded by a percentage intended to substitute for the exercise of billing judgment." *Id.* Likewise, the Homeowners are not entitled to fees for issues on which they did not prevail, and they cannot have prevailed on issues they did not pursue. *Id.* at 769.

Although the district court found the Homeowners' marshaling of evidence "shoddy," it also noted that resources were "too scarce" to warrant the amount of time it would take to determine the appropriate fee award. As we held in *League of United Latin American Citizens #4552 (LULAC) v. Roscoe Independent School District*, 119 F.3d 1228 (5th Cir. 1997), "mere recitation that there is insufficient documentation cannot insulate" the district court's analysis from our review. *Id.* at 1233. The bills submitted by the Homeowners include the date of each hour spent and the time spent to the tenth of an hour.[3] In addition, a majority of the entries include a "short but thorough description of the services rendered"—thus, these submissions appear to meet the threshold standard we set in *LULAC*. *Id.* Of course, not every entry is equally specific, and the district court has broad

---

[3] At this point, we pause to emphasize that the bills presented by the Homeowners are in fact the same bills the Homeowners reviewed and paid during the litigation.

discretion to exclude or reduce the entries that are vague.[4]  *Id.*  We also ruled in *LULAC* that the district court must eliminate excessive or duplicative time.  *Id.* at 1232.  On remand, the district court should analyze the evidence submitted by the Homeowners and determine an appropriate fee award, keeping in mind the criteria set out in *LULAC*.  As a final matter, we note that the Homeowners are also entitled to reasonable attorney's fees for the time devoted to this appeal.  *Id.* at 1236.  Whether to allow the Homeowners to amend their prior fee application to comply with *LULAC* is left to the discretion of the district court.

For the forgoing reasons, we REVERSE the district court's findings that the Homeowners were not a prevailing party within the meaning of § 1988 and that special circumstances existed that justified the denial of attorney's fees, and we REMAND for a determination of attorney's fees consistent with this opinion.

---

[4] For example, at least one invoice includes such summary descriptions as "research regarding" and "research legal issues."  These general descriptions are almost identical to the entry we found vague in *LULAC*.  119 F.3d at 1233.  In that case, we held that such vague entries could be reduced or eliminated by the district court.  *Id.*