United States Court of Appeals
Fifth Circuit

**F I L E D**

April 20, 2005

Charles R. Fulbruge III
Clerk

**UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT**

No. 04-60412

TERESA BAILEY, on behalf of herself and all others similarly
situated; and GLORIA HARPER, on behalf of herself and all others
similarly situated,

Plaintiffs-Appellees,

versus

STATE OF MISSISSIPPI, *et al.*,

Defendants,

FAYE PETERSON, in her official capacity,

Defendant-Appellant.

Appeal from the United States District Court
For the Southern District of Mississippi

Before REAVLEY, DeMOSS, and PRADO, Circuit Judges.

DeMOSS, Circuit Judge:

This appeal stems from the district court's grant of
attorney's fees to Plaintiffs-Appellees Teresa Bailey and Gloria
Harper ("Plaintiffs"), on behalf of themselves and others similarly
situated, pursuant to 42 U.S.C. § 1988. Defendant-Appellant Hinds
County District Attorney Faye Peterson ("Peterson") argues the
district court erred in finding that Plaintiffs qualified for §

1988 attorney's fees as prevailing parties.   We agree with Peterson.   For the following reasons, we REVERSE and VACATE the award of attorney's fees.

**BACKGROUND**

Plaintiffs were convicted of violating Mississippi's Bad Check law, MISS. CODE ANN. § 97-19-55, in Hinds County, Mississippi. Without counsel, both women were sentenced to multiyear prison sentences.   These events arose due to the Hinds County District Attorney's office's policy of enforcing the Bad Check law by taking alleged bad check offenders directly to the justice court and having them sign a waiver of attorney form without explanation. The justice court judge did not conduct independent examinations concerning the accused's waiver of counsel.   Those offenders who could not pay were incarcerated.

In August 2001 Plaintiffs filed the instant 42 U.S.C. § 1983 lawsuit, challenging both the constitutionality of the Bad Check law (equal protection violation) and the procedure by which Hinds County enforced the law (deprivation of right to counsel). Plaintiffs were serving their sentences when they filed their federal action.  Approximately one day later, Plaintiffs filed for post-conviction relief in the County Court of Hinds County, Mississippi, alleging the same constitutional violations as in their § 1983 suit.   In January 2002 the Mississippi state court ruled in favor of Plaintiffs, finding that the policies and

2

procedures employed by Peterson's office were unconstitutional because Plaintiffs had been denied their right to counsel. The state court ordered that Plaintiffs be released. After this ruling, Peterson's office hired a consulting group to recommend changes and subsequently made several revisions to the policies used to enforce the Bad Check law to ensure accused offenders were notified of their right to counsel.[1] The federal lawsuit continued.

Peterson moved to dismiss and for summary judgment on the federal complaint in September 2002, arguing that the demand for injunctive relief was moot because the policies and procedures had already been thoroughly rewritten. The Mississippi Attorney General also moved to dismiss, arguing the statutory scheme was constitutional. Plaintiffs opposed such motions and obtained the court's permission to conduct additional discovery of Peterson.

The district court granted both motions to dismiss and dismissed the complaint with prejudice in August 2003, ruling that the Bad Check law was facially constitutional and choosing not to "resolve whether there continues to exist a live and justiciable claim for prospective equitable relief by plaintiffs."

In September 2003 Plaintiffs moved for attorney's fees pursuant to § 1988. Plaintiffs argued they were "prevailing

---

[1]The policy of Peterson's office now requires officials to advise indigent defendants of their right to counsel in writing; to obtain signed, written waivers of the right to counsel; and to present all misdemeanor cases of bad checks to a circuit court rather than a justice court.

parties" within the meaning of the statute because their lawsuits had forced Peterson to change her office's Bad Check law procedures. Peterson opposed the request for attorney's fees, arguing the Supreme Court had rejected the "catalyst theory" that allowed plaintiffs to recover attorney's fees, even though they had not obtained an actual judgment or consent decree. Plaintiffs responded with a timeline of events to show that the post-conviction relief combined with the "pending threat of injunctive relief from this Court set into motion the very changes that were at the heart of Plaintiffs' Complaint."

The district court ruled in favor of Plaintiffs in April 2004 and awarded them attorney's fees and expenses in the amount of $23,114.14. In its decision, the court recognized that the catalyst theory was no longer a viable basis for awards but cited the state court's ruling as proof that the policies of Peterson's office were unconstitutional. The order also stated the court "was poised to order relief to plaintiffs on the basis of the deficiencies identified by" the state court. Peterson timely appealed.

## DISCUSSION

This Court reviews the district court's decision to award attorney's fees pursuant to § 1988 for abuse of discretion. *Volk v. Gonzalez*, 262 F.3d 528, 534 (5th Cir. 2001). "The factual findings supporting an award of attorney's fees are reviewed for

clear error; the conclusions of law underlying the award are reviewed *de novo*." *Id.*

Prior to the Supreme Court's decision in *Buckhannon Board and Care Home, Inc. v. West Virginia Department of Health and Human Resources*, 532 U.S. 598 (2001), this Court used to describe prevailing-party status as an underlying factual determination subject only to clear error review. *Scham v. Dist. Courts Trying Criminal Cases*, 148 F.3d 554, 557 (5th Cir. 1998). We had also followed the catalyst theory: plaintiffs were considered prevailing parties even if their cases settled or became moot, so long as the lawsuit itself was a substantial factor or significant catalyst that caused the defendants to voluntarily change their behavior to the result plaintiffs desired. *See Foreman v. Dallas County, Tex.*, 193 F.3d 314, 318-21 (5th Cir. 1999).

However, the Supreme Court in *Buckhannon* expressly found the catalyst theory no longer viable in the context of an award of attorney's fees to a prevailing party under the Fair Housing Amendments Act of 1988, 42 U.S.C. § 3613(c)(2), and the Americans with Disabilities Act of 1990, 42 U.S.C. § 12205. *Buckhannon*, 532 U.S. at 605, 610. The Court abrogated use of the catalyst theory for awards under fee-shifting statutes because it "allows an award where there is no judicially sanctioned change in the legal relationship of the parties." *Id.* at 605. "We cannot agree that the term 'prevailing party' authorizes federal courts to award

5

attorney's fees to a plaintiff who, by simply filing a nonfrivolous but nonetheless potentially meritless lawsuit (it will never be determined), has reached the 'sought-after destination' without obtaining any judicial relief." *Id.* at 606 (citation omitted). The Court stated that "enforceable judgments on the merits and court-ordered consent decrees create the 'material alteration of the legal relationship of the parties' necessary to permit an award of attorney's fees." *Id.* at 604 (citation omitted). Judgments on the merits and consent decrees thus fall on the prevailing-party side of the line. *See id.* In contrast, the Court explained that an interlocutory ruling which reverses a dismissal for failure to state a claim, a reversal of a directed verdict for defendant, and a pronouncement of unconstitutionality unaccompanied by judicial relief are not legal victories for plaintiffs. *Id.* at 605-06.

Post-***Buckhannon***, every Circuit to address the issue has determined that the characterization of prevailing-party status for awards under fee-shifting statutes such as § 1988 is a legal question subject to *de novo* review.[2] This Court agrees that, post-***Buckhannon,*** we will review such question *de novo*.

---

[2]*See, e.g.,* ***Palmetto Props., Inc. v. County of DuPage***, 375 F.3d 542, 547 (7th Cir. 2004) (42 U.S.C. § 1988); ***Pres. Coalition of Erie County v. Fed. Transit Admin.***, 356 F.3d 444, 450 (2d Cir. 2004) (National Historic Preservation Act, 16 U.S.C. § 470w-4); ***Richard S. v. Dep't of Developmental Servs.***, 317 F.3d 1080, 1085-86 (9th Cir. 2003) (§ 1988); ***Christina A. ex rel. Jennifer A. v. Bloomberg***, 315 F.3d 990, 992 (8th Cir. 2003) (§ 1988); ***Truesdell v. Philadelphia Hous. Auth.***, 290 F.3d 159, 163 (3d Cir. 2002) (§ 1988); ***Smyth ex rel. Smyth v. Rivero***, 282 F.3d 268, 274 (4th Cir. 2002) (§ 1988); ***Fireman's Fund Ins. Co. v. Tropical Shipping & Constr. Co., Ltd.***, 254 F.3d 987, 1012 (11th Cir. 2001) (F.R.C.P. 54(d)).

**Whether the district court abused its discretion in awarding Plaintiffs attorney's fees pursuant to § 1988.**

Plaintiffs seek fees under § 1988 here. Section 1988 provides, in relevant part: "In any action or proceeding to enforce a provision of section[] . . . 1983 . . . of this title . . . the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs." 42 U.S.C. § 1988(b). In *Farrar v. Hobby*, 506 U.S. 103 (1992), the Supreme Court stated in the context of fees under § 1988:

> Therefore, to qualify as a prevailing party, a civil rights plaintiff must obtain at least some relief on the merits of his claim. The plaintiff must obtain an enforceable judgment against the defendant from whom fees are sought . . . or comparable relief through a consent decree or settlement . . . . Whatever relief the plaintiff secures must directly benefit him at the time of the judgment or settlement. Otherwise the judgment or settlement cannot be said to "affec[t] the behavior of the defendant toward the plaintiff." Only under these circumstances can civil rights litigation effect "the material alteration of the legal relationship of the parties" and thereby transform the plaintiff into a prevailing party. In short, a plaintiff "prevails" when actual relief on the merits of his claim materially alters the legal relationship between the parties by modifying the defendant's behavior in a way that directly benefits the plaintiff.

*Id.* at 111-12 (alteration in original) (internal citations omitted). In *Foreman*, pre-*Buckhannon*, this Court declined to definitively resolve whether, after *Farrar*, the catalyst theory was viable. 193 F.3d at 320 (labeling *Farrar* "seemingly at odds with the catalyst theory which allows a plaintiff to claim prevailing

7

party status even if there is no material change in the legal relationship between the parties"). *Buckhannon* answered that question in the negative. The parties do not dispute the applicability of *Buckhannon* here. Thus, the only issue here is the legal relevance of the facts found by the district court.

Peterson argues that Plaintiffs obtained no judicial relief in their § 1983 action and thus cannot be considered prevailing parties under § 1988. Peterson underscores that the fee-shifting provision of § 1988 is merely "part of the § 1983 remedy" and creates no independent cause of action. *See Maine v. Thiboutot*, 448 U.S. 1, 11 (1980). Peterson contends that all Plaintiffs received from the district court in their federal lawsuit was a mere comment, in the court's order awarding fees, suggesting that the old policies on bad check prosecutions were constitutionally flawed; favorable statements of law, however, are not enough to justify an award of attorney's fees. *See Buckhannon*, 532 U.S. at 606; *Farrar*, 506 U.S. at 112.

Peterson also maintains Plaintiffs' post-conviction relief in the state trial court is irrelevant to the § 1988 analysis. Peterson notes this is not a case where preclusion resulted from the state court case and spurred a favorable judgment in the § 1983 action. Peterson relies on *Healy v. Town of Pembroke Park*, 831 F.2d 989, 994 (11th Cir. 1987), for the proposition that liability in state court proceedings does not equate with relief on the

8

merits in federal court under § 1983. *See also **Lui v. Comm'n on Adult Entm't Establishments***, 369 F.3d 319, 327-28 (3d Cir. 2004) (holding district court lacks authority to award attorney's fees after dismissing § 1983 action on abstention grounds, even if state criminal court grants relief); ***Quinn v. Missouri***, 891 F.2d 190, 194 (8th Cir. 1989) (denying attorney's fees where § 1983 action dismissed, although plaintiff obtained state court relief). Peterson argues the state court victories contributed nothing to Plaintiffs' § 1983 action, which was dismissed with prejudice. Filing both actions at the same time was a tactical decision of Plaintiffs that Peterson does not second-guess; however, because Plaintiffs obtained no relief at all from the district court, they cannot be considered prevailing parties.

Finally, Peterson contends the arguments Plaintiffs put forth in their motion for attorney's fees were precisely the type of catalyst theory arguments the Supreme Court unmistakably precluded in ***Buckhannon***. Although the district court acknowledged ***Buckhannon***'s holding, its emphasis on chronology was reminiscent of pre-***Buckhannon*** practice "to assess the provocative effect of the plaintiff's lawsuit." ***Hennigan v. Ouachita Parish Sch. Bd.***, 749 F.2d 1148, 1152 (5th Cir. 1985). Peterson argues if the actions of the defendant are not compelled by a judgment or a consent decree in the § 1983 action, then there is no material alteration in the parties' legal relationship sufficient to support a fee award.

9

*Buckhannon*, 532 U.S. at 605.

Plaintiffs respond first that the district court made it clear that it "was poised to order relief to plaintiffs on the basis of the deficiencies identified" by the state court. Plaintiffs argue the changes in policy could hardly be labeled voluntary and that the combination of the state court's ruling and the federal court lawsuit resulted in those changes. Plaintiffs contend they cannot be faulted for ill timing: that the state court ruling preceded that of the federal court.

Plaintiffs next rely on *Palmetto* for the proposition that where a defendant's change in action is made only after a court has made a substantive determination of the issues, that "action is most persuasively construed as involuntary – indeed exhibiting judicial imprimatur." 375 F.3d at 550. In *Palmetto*, plaintiffs challenged the constitutionality of state and local adult entertainment regulations; the court found a portion of the statute unconstitutional on summary judgment. *Id.* at 546. By the time a final judgment was entered, the order was for dismissal inasmuch as the case was mooted by the ordinance being amended. *Id.* However, the court of appeals upheld the fee award on the basis that the defendant's cessation of the challenged practice occurred only after the plaintiffs won partial summary judgment. *Id.* at 550. Plaintiffs contend that here the legal relationship between the parties was unquestionably altered and, but for the fortuity that

10

the state court ruled first, would have been so altered as a result of the federal lawsuit.[3]

Finally, Plaintiffs maintain that their circumstances are unusual and that the court properly considered the individual posture of their case. Plaintiffs emphasize the district court would have granted them relief if the state court's decision had not resulted in policy changes by Peterson's office. Plaintiffs contend denying them fees here inequitably rewards Peterson for a fortuity in timing.

Here, the district court, in its memorandum order dismissing Plaintiffs' § 1983 action with prejudice, expressly stated: "The cursory briefing on these arguments [regarding prospective relief] is regrettable, given the complexity of the standing and mootness issues presented by the case." The court then determined that it did not need to resolve the issue and only mentioned the issue hypothetically in its order awarding fees. Although the district court in its order awarding attorney's fee essentially determined that the parties' legal relationship had been altered in favor of

---

[3]We note *Palmetto* is distinguishable because there, the plaintiff had achieved partial relief on summary judgment in the instant federal § 1983 action, even if it was not final judgment on the merits or a consent decree. The plaintiff won a favorable ruling in the federal action that could have been enforced on final judgment had the plaintiff not "graciously – and in reliance upon Defendants' assurances – waited for the Defendants to amend the regulation and moot the case." 375 F.3d at 550. The summary judgment ruling for the plaintiff struck down as unconstitutional the portion of the adult-entertainment zoning ordinance pertaining to forest preserves; the court interpreted that as a "judicially sanctioned change in the parties' legal relationship." *Id.* (internal quotation marks omitted). It was not merely a favorable statement of law, but rather a partial judicial ruling on the merits.

Plaintiffs as a result of their § 1983 case still being pending, regardless of the fact that neither a consent decree nor any specific judgment in favor of Plaintiffs had been issued, this reasoning was based solely on the chronology of the events in the two courts and on the hypothetical "poised" relief that the district court alleged it would have granted had Peterson's office not changed its bad check policies.

While Plaintiffs did not corral their arguments for fees under the catalyst theory, and the district court properly memorialized its inability to rely on the catalyst theory to award such fees, this is precisely what occurred. The district court allowed an award where the court itself had effected "no judicially sanctioned change in the legal relationship of the parties" – a key component of catalyst theory-based awards – in violation of *Buckhannon*, 532 U.S. at 605. The dismissal with prejudice inured solely to Defendants' and Peterson's benefit. We therefore find that the § 1983 suit's dismissal with prejudice does not qualify as action taken by the district court bearing the sufficient judicial imprimatur to survive *Buckhannon* and support an award of attorney's fees.

### CONCLUSION

Having carefully reviewed the record, the parties' respective briefs and arguments, for the reasons discussed above, we conclude the district court legally erred by designating Plaintiffs as

12

prevailing parties under § 1988.  We thus REVERSE and VACATE the district court's award of attorney's fees to Plaintiffs as an abuse of discretion.

**REVERSED and VACATED.**