IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

December 8, 2008

Charles R. Fulbruge III
Clerk

No. 08-40128

KARWANA BOYD

Plaintiff - Appellee

V.

STATE OF TEXAS; OLEN UNDERWOOD

Defendants - Appellants

Appeal from the United States District Court
for the Southern District of Texas
USDC No. 3:06-CV-00256

Before BENAVIDES, SOUTHWICK, and HAYNES, Circuit Judges.

PER CURIAM:[*]

Karwana Boyd brought this civil rights litigation against, inter alia, the State of Texas and Judge Olen Underwood, the Chief Judge for the Second Administrative Judicial Region, alleging that Boyd was required to remove a religiously-motivated head scarf in court. Following a discussion during a status conference before the district court, the substance of the case was resolved by a letter sent by Chief Judge Underwood to the judges in his region confirming that people who wear religious clothing or head wear are not required to remove their

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

religious clothing or head wear upon entering the courtroom. The district court entered a final judgment against Defendants awarding Boyd prevailing party attorney's fees in the amount of $17,250.00. Defendants appeal the award of attorney's fees. Because we hold that the district court erred in concluding that Boyd was a prevailing party under 42 U.S.C. § 1988 (2003), we VACATE the district court's judgment insofar as it awarded prevailing party attorney's fees and AFFIRM the remainder of the district court's judgment.

## I. BACKGROUND

Boyd alleges that on March 15, 2006, a court security officer at the Galveston County courthouse ordered her to remove her head scarf before she could attend a hearing scheduled before Judge Henderson, a traveling judge for the State of Texas who handles child support cases in six counties. She alleges that she informed the officer that she was a Muslim and that she should not be required to remove her head scarf because she wore it in observance of hijab.[1] After Boyd gave her reasons for wearing the head scarf to Judge Henderson, she alleges that Judge Henderson again ordered her to leave the courtroom. Boyd waited outside the courtroom for two-and-one-half hours before she was approached by an attorney.

Boyd sued the State of Texas and Judge Henderson under 42 U.S.C. § 1983 (2003). In response, Judge Henderson asserted that all litigants in family court were required to leave the courtroom to consult with available attorneys and that Boyd was not removed from the courtroom for wearing a head scarf. In her Second Amended Complaint, Boyd added as a defendant Judge Olen Underwood, Chief Judge for the Second Administrative Judicial Region of Texas, and dismissed her claims against Judge Henderson.

---

[1] As defined by Boyd, hijab refers generally to the Islamic tradition of modesty in dress and is often used specifically to refer to the wearing of head scarves.

On May 25, 2007, the district court heard the parties on pending motions. During the hearing, the district court suggested "[w]hy don't they just have a policy change that permits the people to wear religious headgear in a court and be done with this." The State asserted that there was never any policy prohibiting people from wearing religious headgear, that Boyd was never required to remove her head scarf, and that Boyd was treated the same as all other litigants. Boyd argued that there was some evidence to suggest that she was removed from the court because of her head scarf.[2] In response, the district court stated:

> Well, I guess what I'm saying is, look, these kinds of cases devour taxpayer dollars . . . . If, as you properly say, there is no such policy, then a simple confirmation declaration that there is no policy against wearing religious headgear in the court ends the case. Is that not something you can take care of?

The State responded in the affirmative. The district court then administratively closed the case for thirty days on the basis of a likely settlement.

The parties conferred and agreed that Chief Judge Underwood would send a letter to other judges in the Second Administrative Judicial Region with language consistent with the district court's suggestion. Boyd also requested that the State pay $1.00 as damages and Boyd's reasonable and necessary attorney's fees as to be decided by the district court. The State responded that it was not willing to pay any damages or attorney's fees because "Plaintiff is not a prevailing party in this lawsuit."

On June 25, 2007, Chief Judge Underwood sent a letter to all judges in the Second Administrative District reminding judges to be sensitive to the constitutional rights of people in the courtroom and specifically noting that people who wear religious clothing or head wear are not required to remove their

---

[2] The evidence referenced by Boyd did not suggest that there was any policy requiring the removal of religiously-motivated head coverings. In any event, the parties dispute the underlying facts.

3

religious clothing or head wear upon entering the courtroom. The State and Chief Judge Underwood then filed the letter with the district court and requested that the court dismiss Boyd's claims.

On July 5, 2007, Boyd moved to reopen the case and for a final judgment in her favor. She also moved for her reasonable and necessary attorney's fees "as the prevailing party" based on "the apparent resolution of the issues in this matter." Defendants responded to the motion by asserting that Boyd was not entitled to attorney's fees because there was no court-ordered change in the legal relationship between the plaintiff and the defendant. Defendants also asserted that the district court lacked jurisdiction to enter a judgment because there was no case or controversy.[3]

On January 7, 2008, the district court entered an order granting Boyd's motions to reopen and for attorney's fees. The district court held that Boyd was a prevailing party because "the proceedings in this case and Defendant[s'] own filings indicate that while there is not a formal consent decree or written order from the court, Defendant[s'] actions in resolution of this dispute were a direct result of the Court's instructions given in open court." The district court entered a final judgment awarding Boyd $17,250.00 in attorney's fees. This appeal resulted.

## II. DISCUSSION

Section 1988 provides, in relevant part: "In any action or proceeding to enforce a provision of section[ ] . . . 1983 . . . of this title . . . the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs . . . ." 42 U.S.C. § 1988(b). "[T]he

---

[3] Chief Judge Underwood also made some challenges specific to him that are reurged on appeal. Because of our resolution of the attorney's fees issue, we need not reach those challenges. Similarly, the State concedes that its 11th Amendment immunity challenge would not apply to Chief Judge Underwood. Thus, we resolve the appeal as to all parties on the attorney's fees issue.

characterization of prevailing-party status for awards under fee-shifting statutes such as § 1988 is a legal question subject to de novo review." Bailey v. Mississippi, 407 F.3d 684, 687 (5th Cir. 2005).

In Farrar v. Hobby, 506 U.S. 103 (1992), the Supreme Court stated:

[T]o qualify as a prevailing party, a civil rights plaintiff must obtain at least some relief on the merits of his claim. The plaintiff must obtain an enforceable judgment against the defendant from whom fees are sought, . . . or comparable relief through a consent decree or settlement, . . . . Whatever relief the plaintiff secures must directly benefit him at the time of the judgment or settlement. . . . Otherwise the judgment or settlement cannot be said to "affec[t] the behavior of the defendant toward the plaintiff." . . . Only under these circumstances can civil rights litigation affect "the material alteration of the legal relationship of the parties" and thereby transform the plaintiff into a prevailing party. . . . In short, a plaintiff "prevails" when actual relief on the merits of his claim materially alters the legal relationship between the parties by modifying the defendant's behavior in a way that directly benefits the plaintiff.

Id. at 111-12 (citations omitted) (alteration in original). The court went on to hold:

To be sure, a judicial pronouncement that the defendant has violated the Constitution, unaccompanied by an enforceable judgment on the merits, does not render the plaintiff a prevailing party. Of itself, "the moral satisfaction [that] results from any favorable statement of law" cannot bestow prevailing party status. . . . No material alteration of the legal relationship between the parties occurs until the plaintiff becomes entitled to enforce a judgment, consent decree, or settlement against the defendant.

Id. at 112 (citations omitted) (alteration in original). Interpreting Farrar, this court has recognized three requirements for prevailing party attorney's fees to be awarded under 42 U.S.C. § 1988(b): "the plaintiff must (1) obtain actual relief, such as an enforceable judgment or a consent decree; (2) that materially alters the legal relationship between the parties; and (3) modifies the defendant's

behavior in a way that directly benefits the plaintiff at the time of the judgment or settlement." Walker v. City of Mesquite, 313 F.3d 246, 249 (5th Cir. 2002).

The district court's determination discussed above was, in effect, a statement of the old catalyst theory, which "allowed a plaintiff to achieve prevailing party status—even in the absence of a formal victory in court—if the plaintiff's suit was a 'substantial factor or a significant catalyst' in obtaining the relief sought." Foreman v. Dallas County, 193 F.3d 314, 319 (5th Cir. 1999) (quoting Williams v. Leatherbury, 672 F.2d 549, 550-51 (5th Cir. 1982)). Prior to the Supreme Court's decision in Buckhannon Bd. & Care Home, Inc. v. W. Va. Dept. of Health & Human Res., 532 U.S. 598 (2001), this court followed the catalyst theory. Foreman, 193 F.3d at 319; see also Bailey v. Mississippi, 407 F.3d 684, 686-87 (5th Cir. 2005).

In Buckhannon, the Supreme Court declined to follow the catalyst theory. 532 U.S. at 605. The Court held, "[w]e cannot agree that the term 'prevailing party' authorizes federal courts to award attorney's fees to a plaintiff who, by simply filing a nonfrivolous but nonetheless potentially meritless lawsuit (it will never be determined), has reached the 'sought-after destination' without obtaining any judicial relief." Id. at 606 (citation omitted). The Court stated that "enforceable judgments on the merits and court-ordered consent decrees create the 'material alteration of the legal relationship of the parties' necessary to permit an award of attorney's fees." Id. at 604 (citation omitted). In contrast, the Court explained that a pronouncement of unconstitutionality unaccompanied by judicial relief is not a legal victory for plaintiffs. Id. at 606.

This court has not yet decided the circumstances under which a settlement might satisfy Buckhannon, and we do not believe the present case requires the court do so here. Boyd's counsel performed admirably in obtaining an acknowledgment that Boyd should be permitted to wear her religiously motivated head scarf in court. We also commend counsel for the manner by

which he accomplished this for Boyd. By agreeing that the dispute was resolved on the basis of a simple letter from Chief Judge Underwood to other judges in the judicial region, counsel for Boyd minimized the use of precious judicial resources and helped his client reclaim rights she believed were abridged by Judge Henderson.

We agree that counsel for the State should at least consider a pragmatic approach to resolving the issues – as was ultimately done here – before either side spends unnecessary time or money. But the district court's understandable frustration with the delay in achieving a pragmatic solution does not transform Boyd into a "prevailing party." The letter sent by Chief Judge Underwood merely confirmed his and the State's contention throughout the litigation, that is, that there was no policy prohibiting Boyd from wearing her religiously-motivated head scarf. Neither the State nor Chief Judge Underwood contended that it is appropriate to act as Boyd alleges Judge Henderson did. Under these circumstances, the letter cannot be said to have modified the defendants' behavior in a way that directly benefitted Boyd. See Walker, 313 F.3d at 249. In addition, assuming arguendo that the letter had some legally binding effect, at most it was a pronouncement of unconstitutionality unaccompanied by judicial relief, which cannot support the award of prevailing party attorney's fees under 42 U.S.C. § 1988. Buckhannon, 532 U.S. at 606; Bailey, 407 F.3d at 688. Indeed, the parties continue to dispute what happened on the day in question.

## III. CONCLUSION

For the reasons discussed above, we VACATE the district court's judgment insofar as it awarded prevailing party attorney's fees to Boyd. We AFFIRM the remainder of the district court's judgment.

VACATED in part, AFFIRMED in part.