# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**
June 16, 2011

No. 10-50399

Lyle W. Cayce
Clerk

LULAC OF TEXAS; MEXICAN AMERICAN BAR ASSOCIATION OF
HOUSTON, TEXAS (MABAH); ANGELA GARCIA; BERNARDO J GARCIA;
ELVIRA RIOS; ROGER ROCHA; ROSARIO VERA; RAYMUNDO VELARDE,

Plaintiffs - Appellees  Cross - Appellants

v.

TEXAS DEMOCRATIC PARTY,

Defendant - Appellant  Cross - Appellee

Appeals from the United States District Court
for the Western District of Texas
USDC No. 5:08-CV-389

Before JONES, Chief Judge, and KING and BARKSDALE, Circuit Judges.

PER CURIAM:[*]

At issue is an award of attorney's fees and costs to plaintiffs (LULAC)
under the Voting Rights Act (VRA) against the Texas Democratic Party (TDP).
For this action, filed in 2008, under VRA §§ 2 and 5 against the State of Texas

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not
be published and is not precedent except under the limited circumstances set forth in 5TH CIR.
R. 47.5.4.

and TDP, a district judge denied a preliminary injunction and granted defendants' motions to dismiss. LULAC appealed regarding § 5; and, *inter alia*, our court affirmed the State's dismissal and remanded for a three-judge court to consider the § 5 claim against TDP. On remand, after being denied summary judgment, TDP voluntarily obtained § 5 preclearance from the United States Attorney General; and this action was dismissed as moot.

TDP contests the subsequent award of attorney's fees and costs to LULAC, contending it is not a requisite "prevailing party". LULAC challenges the amount of fees awarded and the award's being stayed without TDP's being required to post a bond. Because LULAC is *not* a prevailing party, the award is VACATED.

## I.

In May 2008, LULAC filed this action against TDP and the State, claiming violations of VRA §§ 2 and 5, 42 U.S.C. §§ 1973, 1973c. Section 2 prohibits a "standard, practice, or procedure" with respect to voting that denies voters an equal opportunity to elect candidates of their choice. 42 U.S.C. § 1973. Under § 5, preclearance is required for any change by a covered "State or political subdivision" to a "standard, practice, or procedure with respect to voting different from that in force or effect". 42 U.S.C. § 1973c. LULAC challenged TDP's delegate-allocation method for calculating the number of delegates that could be elected to TDP's nominating conventions.

TDP's method, adopted in 1988, operated as follows. For its nominating conventions for the 2008 election, TDP allocated the number of delegates each convention could elect to attend the next convention, based on raw votes for the 2006 Democratic Party gubernatorial candidate. Those who attended precinct conventions elected delegates to the county or state senatorial district conventions (county conventions were held if the county was in a single senate district; senatorial district conventions, if parts of a county were in more than one senate district); the delegates from the precinct conventions attending

2

county or senatorial district conventions elected delegates to the state convention; and those elected to attend the state convention elected delegates to the national convention.

TDP held its primary election and its precinct conventions in early March 2008; its county and senatorial district conventions, in late March. In filing this action that May, LULAC claimed TDP's delegate-allocation method denied "Latino voters an equal opportunity to participate in the electoral process and select candidates of their choice, in violation of Section 2 of the [VRA]". Further, LULAC complained that TDP had not submitted its method for § 5 preclearance. LULAC sought to "enjoin [TDP] . . . from conducting elections pursuant to the non pre-cleared changes and illegal delegate allocation plan".

LULAC moved for a preliminary injunction; TDP and the State, to dismiss. (TDP asserted, *inter alia*: because the changes were adopted in 1988, equitable principles should bar LULAC's claims as untimely. On the subsequent first appeal, our court noted that equitable doctrines might affect the remedy, but did not provide grounds for dismissal. *LULAC of Tex. v. Texas*, 318 F. App'x 261, 264 (5th Cir. 2009).) In May 2008, a district judge denied a preliminary injunction and granted the motions to dismiss. TDP's state convention was held that June.

LULAC appealed, contending, for the first time, that its § 5 claim should have been referred to a three-judge court. Because its preliminary-injunction motion had requested only § 5 relief, LULAC did not challenge the dismissal of its § 2 claim, and contested only a three-judge court's not being utilized to decide its § 5 claim.

In early 2009, our court: affirmed the State's dismissal (one judge dissenting); reversed TDP's dismissal; and remanded for a three-judge court to consider the § 5 claim against TDP (whether § 5 covered the contested change, and, if so, the appropriate remedy). *LULAC*, 318 F. App'x at 262-63. In so doing, our court noted that whether preclearance was required turned on three

issues:  was the delegate-allocation method a "standard, practice, or procedure with respect to voting within the meaning of § 5"; did that method constitute a "change" to the most recent practice that was both precleared and in force or effect; and was TDP a "political subdivision subject to § 5".  *Id.* at 263 (internal citation and quotation marks omitted).

On remand, TDP moved for summary judgment, contending it was not a "political subdivision" subject to § 5 and asserting two defenses: First Amendment associational rights; and justiciability.  At the summary-judgment hearing, TDP conceded that its method was a "change".

In August 2009, the three-judge court denied TDP's motion, holding:  it was a "political subdivision" with respect to its delegate-allocation method; and TDP had failed to present evidence to support either of its defenses.  *LULAC of Tex. v. Tex. Democratic Party*, 651 F. Supp. 2d 700, 710-14 (W.D. Tex. 2009).  In denying the motion, the court stated that "political expediency and the TDP's stated support for Section 5 might counsel it now to seek preclearance of its delegate allocation rules".  *Id.* at 713.

Following TDP's being denied summary judgment, LULAC moved for it, seeking to have TDP required to obtain preclearance, and for resolution on the merits of its § 5 claim.  LULAC asserted that the remaining § 5 coverage issue—whether TDP's method was a "standard, practice, or procedure with respect to voting within the meaning of § 5"—should be resolved in its favor.

The three-judge court was never required, however, to rule on LULAC's summary-judgment motion.  Instead, TDP voluntarily submitted its method for § 5 preclearance.  Concomitantly, TDP moved for, and was granted, abatement of this action pending a preclearance response by the Attorney General.  Preclearance was granted; and, in November 2009, TDP's motion to dismiss this action as moot was granted.

Contending it was a prevailing party, LULAC moved for attorney's fees ($129,971.72) and costs ($11,071.18), pursuant to 42 U.S.C. §§ 1973*l*(e) and 1988.

The three-judge court granted that motion in April 2010, ruling that its denial of TDP's summary-judgment motion constituted the requisite "judicial imprimatur" for prevailing-party status. *See, e.g.*, *Buckhannon Bd. & Care Home, Inc. v. W. Va. Dep't of Health & Human Res.*, 532 U.S. 598, 605 (2001) (requiring judicial imprimatur for prevailing-party status). It awarded fees of $56,320.88 (approximately 40 percent of request) and the requested costs. *LULAC of Tex. v. Texas*, No. SA-08-CA-389 (W.D. Tex. 7 Apr. 2010) (order granting attorney's fees and costs). TDP's motion to stay the fees-and-costs order was granted, without requiring TDP to post a bond.

## II.

TDP challenges the fees-and-costs motion's being granted; LULAC, the amount of fees awarded and the award's being stayed without requiring a bond. Because we hold LULAC was *not* a prevailing party, we need not address its cross-appeal.

Under the VRA, 42 U.S.C. § 1973*l*(e), and the Civil Rights Attorney's Fees Award Act, 42 U.S.C. § 1988(b), a district court has discretion to award reasonable attorney's fees to a "prevailing party". Accordingly, its decision is reviewed for abuse of discretion. *E.g.*, *Volk v. Gonzalez*, 262 F.3d 528, 534 (5th Cir. 2001). Factual findings are reviewed for clear error; conclusions of law, *de novo*. *Id.* Along that line, a prevailing-party determination, post-*Buckhannon*, is a conclusion of law, subject to *de novo* review. *E.g.*, *Bailey v. Mississippi*, 407 F.3d 684, 687 (5th Cir. 2005).

Prior to *Buckhannon*, our court applied the catalyst theory to determine prevailing-party status. *Id.* at 686-87. Under that theory, "plaintiffs were considered prevailing parties even if their cases settled or became moot, so long as the lawsuit itself was a substantial factor or significant catalyst that caused the defendants to voluntarily change their behavior to the result plaintiffs desired". *Id.* at 687.

The Supreme Court rejected the catalyst theory in *Buckhannon*, holding it improperly allowed "an award where there is no judicially sanctioned change in the legal relationship of the parties". *Buckhannon*, 532 U.S. at 605. The Court held a prevailing party is one who has obtained some form of judicially-sanctioned relief *materially* altering the legal relationship between the parties, such as a judgment on the merits or a consent decree. *Id.* at 604.

In the light of *Buckhannon*, our court has held that, for prevailing-party status: plaintiff must obtain judicially-sanctioned relief, such as a judgment on the merits or a consent decree (judicial imprimatur); the relief must materially alter the legal relationship between the parties; and it must modify defendant's behavior in a way directly benefitting plaintiff at the time of the relief granted. *Dearmore v. City of Garland*, 519 F.3d 517, 521 (5th Cir. 2008). "Where the plaintiff's success on a legal claim can be characterized as purely technical or *de minimis*, he is not a prevailing party." *Jenevein v. Willing*, 605 F.3d 268, 271 (5th Cir. 2010) (citation and internal quotation marks omitted). Moreover, "defendant's *voluntary change in conduct*, although perhaps accomplishing what the plaintiff sought to achieve by the lawsuit, lacks the necessary judicial *imprimatur* on the change". *Buckhannon*, 532 U.S. at 605 (emphasis added).

In awarding fees and costs, the three-judge court ruled that its summary-judgment denial: resulted in TDP's "revers[ing] the position it had held for many months, [and] deciding to seek preclearance from the Attorney General"; and, therefore, constituted the requisite judicial imprimatur. TDP contends LULAC was *not* a prevailing party because: it did not obtain actual relief altering the legal relationship of the parties; the summary-judgment denied TDP did not award LULAC relief; and TDP's obtaining preclearance was not a modification of its behavior directly benefitting LULAC. LULAC counters that the summary-judgment denial constituted the requisite judicial imprimatur on TDP's submitting its delegate-allocation method for preclearance.

We hold LULAC was *not* a prevailing party because it was not awarded judicially-sanctioned relief on any of its claims and, therefore, TDP's voluntary submission of its method for preclearance lacked the requisite judicial imprimatur. In the light of that holding, we need not address the other two above-described requirements for prevailing-party status (material alteration and modification of defendant's behavior).

**A.**

First, LULAC was not awarded its primary requested relief: a declaratory judgment and injunctive relief. *See Staley v. Harris Cnty., Tex.*, 485 F.3d 305, 314 (5th Cir. 2007) (stating plaintiff must obtain primary relief sought to qualify as prevailing party). LULAC requested, *inter alia*, the following relief: (1) a declaratory judgment that TDP's method violated VRA §§ 2 and 5; (2) injunctive relief against TDP's using the challenged method; and (3) an order requiring TDP to comply with § 5 preclearance requirements.

LULAC primarily sought relief under § 2, on the ground that TDP's delegate-allocation method denied Latino voters an equal opportunity to participate in the electoral process. LULAC also sought § 5 preclearance of TDP's method; however, based on the language of the complaint, it appears LULAC believed TDP's method would not be precleared.

Ultimately, LULAC sought to enjoin TDP from using its delegate-allocation method, to be replaced by one more favorable to Latino voters. It did not simply seek to have TDP's method precleared. Because this action was dismissed as moot, LULAC's primary requested relief was never ruled upon, much less granted. *See, e.g.*, *Energy Mgmt. Corp. v. City of Shreveport*, 467 F.3d 471, 482 (5th Cir. 2006) (holding no prevailing-party status where plaintiff did not prevail on its threshold relief—an award of damages).

**B.**

Second, LULAC was not awarded judicially-sanctioned relief on its secondary requested relief: § 5 preclearance. As the record reflects, and as

conceded by LULAC at oral argument here, the three-judge court's summary-judgment denial was the only potential order awarding LULAC relief on its § 5 claim. Contrary to the court's ruling on awarding fees and costs, however, that summary-judgment denial did *not* award LULAC relief.

There are three reasons why that order did not satisfy the judicial-imprimatur requirement. As an initial matter, it did not require TDP to obtain preclearance, nor did it hold that TDP's method, without preclearance, violated § 5. *See Planned Parenthood of Hous. & Se. Tex. v. Sanchez*, 480 F.3d 734, 741 (5th Cir. 2007) (noting that, in two of our sister circuits, preliminary injunction failed to create prevailing-party status because it merely preserved status quo). TDP was not ordered to adopt a new delegate-allocation method or to cease using its then-challenged method. Needless to say, the court's statement in its summary-judgment denial, that "political expediency and the TDP's stated support for Section 5 might counsel it now to seek preclearance", was *not* an order of relief. *LULAC*, 651 F. Supp. 2d at 713.

As stated, the § 5 coverage determination turned on whether: the delegate-allocation method was a "standard, practice, or procedure with respect to voting within the meaning of § 5"; the method was a "change" to the most recent practice (conceded by TDP); and TDP was a "political subdivision". *LULAC*, 318 F. App'x at 262-63. The summary-judgment denial was also insufficient as a judicial imprimatur because the three-judge court ruled on only one of the two contested requirements for § 5 coverage—whether TDP was a "political subdivision". The three-judge court decided in LULAC's favor on the political-subdivision issue, but a favorable statement of the law "cannot bestow prevailing party status". *Farrar v. Hobby*, 506 U.S. 103, 112-13 (1992) (citation omitted); *see Walker v. City of Mesquite*, 313 F.3d 246, 249-50 (5th Cir. 2002) (ruling plaintiffs prevailing parties where they not only achieved favorable statement of law, but also obtained declaratory relief, partial vacation of remedial order, and revision of that order in district court).

Although TDP conceded, at the summary-judgment hearing, that its delegate-allocation method was a change (again, made in 1988), the three-judge court never ruled on whether that method was a "standard, practice, or procedure with respect to voting within the meaning of § 5". Following the summary-judgment denial, LULAC moved for summary judgment on that issue, but the court never ruled on that motion.

Because the § 5 coverage determination was never ruled upon in its entirety, any favorable statement of the law was *de minimus*. For example, in *Jenevein*, a state judge, after being censured by the Texas State Commission on Judicial Conduct, filed an action against its members to have the censure expunged. *Jenevein*, 605 F.3d at 269. The district court dismissed; but, our court reversed and remanded, granting partial expungement. *Id.* On remand, Jenevein appealed the subsequent denial of his motion for attorney's fees. *Id.* In affirming that denial, our court held that the relief awarded, ordering the district court to expunge part of the censure, was *de minimis*. *Id.* at 271. Although Jenevein received part of his requested relief, the censure remained in effect. *Id.*

Similarly, although the three-judge court decided one of the two contested § 5 issues in favor of LULAC—that TDP constituted a "political subdivision" within the meaning of § 5—that ruling was *de minimis*. The summary-judgment denial left undecided whether the delegate-allocation method was a "standard, practice, or procedure with respect to voting within the meaning of § 5". *See also Roark & Hardee LP v. City of Austin*, 522 F.3d 533, 556 (5th Cir. 2008) (holding success *de minimis* where plaintiff succeeded on claim which had not been appealed on merits, and failed on numerous other claims).

In addition, for TDP's First Amendment associational defense to § 5 coverage, asserted in support of its summary-judgment motion, the court stated that TDP failed to explain how preclearance would implicate its associational rights, leaving open the possibility that it could develop that defense as litigation

progressed. Subsequently, in response to LULAC's summary-judgment motion, TDP provided evidence in support of that defense. Again, the court never ruled on LULAC's motion. Ultimately, the summary-judgment denial was "not the stuff of which legal victories are made". *Buckhannon*, 532 U.S. at 605 (citation and internal quotation marks omitted). (Moreover, it goes without saying that, had LULAC obtained a final judgment from the three-judge court, TDP could have appealed.)

In sum, because the three-judge court never awarded LULAC relief on its § 5 claim, there was no judicial imprimatur for TDP's voluntary submission of its method for preclearance. *See Boyd v. Texas*, 301 F. App'x 363, 367 (5th Cir. 2008) (holding State's decision to provide letter to judges, confirming no policy prohibited plaintiff from wearing religious head scarf in court, unaccompanied by judicial relief, insufficient for prevailing-party status). There was no order requiring TDP to seek preclearance; in its opposition to LULAC's fees-and-costs motion, it maintained it had voluntarily requested preclearance because it was confident it would obtain a favorable response from the Attorney General. That a causal relationship may exist between LULAC's filing this action and TDP's seeking preclearance is insufficient, post-*Buckhannon*, to obtain prevailing-party status. *Buckhannon*, 532 U.S. at 605.

## III.

For the foregoing reasons, the order awarding attorney's fees and costs is VACATED.